611 F.2d 308
 1 Collier Bankr.Cas.2d 276, Bankr. L. Rep. P 67,308
In the Matter of Morley M. KASLER, Bankrupt.
INDUSTRIE AERONAUTICHE E. MECCANICHE RINALDO PIAGGIO S.p.A.,
an Italian Corporation, Plaintiff-Appellant,
v.
Morley M. KASLER, Defendant-Appellee.
 No. 77-3383.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 26, 1979.
 
 Gary L. Gillig, Richards, Watson, Dreyfuss & Gershon, Los Angeles, Cal., for plaintiff-appellant.
 Harold I. Gould, Beverly Hills, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before CHOY, ANDERSON and HUG, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 Appellant (Piaggio) appeals from a judgment of the district court that affirmed a decision of the bankruptcy court holding that a debt was not for "willful and malicious injuries" and thus was discharged in bankruptcy. We affirm.
 
 I. The Case
 
 2
 Under a contract between Piaggio and World Jet Aircraft, Inc. (World Jet), a dispute between them was submitted to an arbitration panel of the World Court in Paris in June 1969, to be decided according to California law. The panel awarded Piaggio $10,000 for libel and trade disparagement and determined that World Jet was the alter ego of Morley Kasler and his son. In 1974, the award was confirmed in a California Superior Court. In 1976, with the debt still unpaid, Morley Kasler was adjudicated a bankrupt.
 
 
 3
 Piaggio filed a complaint to determine the dischargeability of Kasler's debt to it. The only evidence offered was the award of the arbitration panel and the confirming judgment of the California court. The bankruptcy judge found that there was "no showing that the arbitration tribunal . . . either made or required to be made any finding of willful or malicious conduct," and therefore the evidence presented was "insufficient as a matter of law" to prove that the liability was for willful and malicious injuries and thus non-dischargeable.
 
 
 4
 The district judge affirmed. He also looked to whether or not willfulness and malice had necessarily been found by the arbitration panel. He held that malice (in the Bankruptcy Act sense) was a necessary element of libel and of trade disparagement under California law,[1] but that willfulness was not a necessary element of either.
 
 II. Legal Standards
 
 5
 Section 14(f) of the Bankruptcy Act of 1898, as amended, 11 U.S.C. § 32(f), governed this case. It provided that a discharge in bankruptcy shall make null and void all liabilities except, among others, those that are non-dischargeable because they are "for willful and malicious injuries to the person or property of another." Section 17(a)(8) of the Bankruptcy Act of 1898, as amended, 11 U.S.C. § 35(a)(8).[2]
 
 
 6
 The district court correctly held that to come within this section, a liability must be for injuries caused by conduct that was both willful and malicious. 1A Collier on Bankruptcy P 17.17, at 1650.4 (14th ed. 1978).
 
 
 7
 Piaggio had the burden of demonstrating willfulness and malice, but it presented no evidence in the bankruptcy court beyond the bare arbitration award and confirming judgment.[3] In an ordinary case, such prior decisions would not be res judicata or have collateral estoppel effect in a bankruptcy court, because bankruptcy courts have exclusive jurisdiction to determine dischargeability. Brown v. Felsen, 439 U.S. 925, 99 S.Ct. 307, 58 L.Ed.2d 317 (1979); In re Houtman, 568 F.2d 651, 653 (9th Cir. 1978). But if both parties rest their cases on the judgment in a prior proceeding, it is proper to treat it as correct. 568 F.2d at 654. Then the court will consider such facts as willfulness and malice to be established by collateral estoppel, but only if those facts were essential to the prior decision as a matter of law, and thus necessarily were determined to exist by the earlier tribunal.[4]
 
 III. Willfulness
 
 8
 For purposes of this appeal, we need only determine whether under California law libel and trade disparagement include willfulness (in the Bankruptcy Act sense) as a necessary element.
 
 
 9
 The leading Supreme Court case defining the word "willful" in this section of the Bankruptcy Act stated that it meant "intentional and voluntary."[5] Tinker v. Colwell, 193 U.S. 473, 485, 24 S.Ct. 505, 48 L.Ed. 754 (1904).[6] We are mindful of the rule that exceptions to dischargeability should be strictly construed in order to serve the Bankruptcy Act's purpose of giving debtors a fresh start. Gleason v. Thaw, 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915); In re Houtman, 568 F.2d at 656. Therefore, we will not unnecessarily expand the class of "willful" injuries. We conclude that the proper definition of a "willful" injury for the purposes of the Bankruptcy Act is simply an intentional injury.[7]
 
 A. Libel
 
 10
 When injury is caused by false statements, as here, "willfulness" denotes that the speaker knew his statements were false. Since reckless disregard for the truth or falsity of the statements could have underlain the arbitration judgments for libel and trade disparagement, Piaggio has failed to produce any evidence that the arbitration liability was necessarily for "willful" injuries.
 
 
 11
 The district court held that under California law liability for libel could have been imposed in 1969 for statements that the speaker did not know were false, and thus were not "willful." Except as the Constitution requires otherwise, libel liability in California can even be based on simple negligence. Davis v. Hearst, 160 Cal. 143, 157, 116 P. 530, 536 (1911); Tendler v. Dun & Bradstreet, Inc., 43 Cal.App.3d 788, 790, 118 Cal.Rptr. 274, 276 (1974). No Supreme Court case has ever suggested that a false statement made with reckless disregard for its truth or falsity could not constitutionally support a libel judgment. See New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (authorizing libel liability for negligent untruths about private figures).
 
 B. Trade Disparagement
 
 12
 We also find that the liability for trade disparagement was not necessarily based on willful conduct. The district court found that in Gudger v. Manton, 21 Cal.2d 537, 541, 134 P.2d 217, 220 (1943), California had adopted the definition of Restatement of Torts § 624 (1938) for trade disparagement. This definition "contains the classic language of negligence," concluded the district court, and thus it permits liability for non-willful conduct.
 
 
 13
 However, Gudger and § 624 involved slander of title, the questioning of another's Title to property, not trade disparagement (or trade libel, as it is more commonly known in California), which is the disparagement of the Quality of another's property. In California these two torts are considered distinct. 4 B. Witkin, Summary of California Law § 327, at 2593 (1974).
 
 
 14
 We find only two California cases that discuss the elements of trade libel at all. In Shores v. Chip Steak Co., 130 Cal.App.2d 627, 630, 279 P.2d 595, 597 (1955), it was said, "The distinction between libel and trade libel is that the former concerns the person or reputation of plaintiff and the latter relates to his goods." This suggests that reckless disregard or even negligence would suffice for trade disparagement liability just as with libel.
 
 
 15
 The definition of trade libel was addressed more directly in Erlich v. Etner, 224 Cal.App.2d 69, 73, 36 Cal.Rptr. 256, 258 (1964): "Trade libel is defined as an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff. (Rest. Torts §§ 626 and 627.)" Accord, 4 B. Witkin, Summary of California Law § 330, at 2596 (1974). Restatement of Torts § 626 (1938) defines trade libel thusly:
 
 
 16
 One who without a privilege to do so publishes an untrue statement of fact which is disparaging to the quality of another's land, chattels or intangible things, under circumstances which would lead a reasonable man to foresee that the conduct of a third person as purchaser or lessee thereof would be determined thereby, is liable for pecuniary loss . . . .
 
 
 17
 Section 626, Comment i, reads, "As to the publisher's knowledge of the untruth of the disparaging statement and the impropriety of his purpose in publishing it, see § 628 and Comments B and C on § 625." Those provisions, in turn, make clear that to be liable a speaker need not know, believe, or have reason to believe that his statement is false, and a speaker is not protected even if he has reason to believe his statement is true. If the facts show (1) that the statement is in fact false, and (2) that the speaker knows or has reason to know that a third person will rely on it, liability without fault follows.
 
 
 18
 In light of the citation to § 626 and its strict-liability provisions, and in light of the suggestion in Shores that trade disparagement cases are governed by the same principles regarding knowledge of falsity that govern libel cases, we do not believe that the Erlich court meant that liability for trade disparagement could be imposed only where the speaker had actual knowledge that his statement was false. We do not believe that California courts then (or now) would have refused to find trade disparagement where the speaker disparaged with reckless disregard of whether his statement was true or false. Even Restatement (Second) of Torts §§ 623A and 626 (1977), which adopts a scienter standard, would allow liability in a reckless disregard case.
 
 
 19
 Therefore, a bare judgment for trade disparagement cannot meet the standard for willfulness.
 
 IV. Conclusion
 
 20
 The arbitration award for libel and trade disparagement, standing alone, is no proof of "willful" injuries.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 Our disposition of the case makes it unnecessary for us to reach this finding
 
 
 [2]
 The old Bankruptcy Act was superseded on October 1, 1979, by the Bankruptcy Act of 1978, Pub.L. 95-598, 92 Stat. 2549. The counterpart to § 17(a)(8) of the old Act is new 11 U.S.C. § 523(a)(6)
 
 
 [3]
 Indeed, there is not even any evidence that Kasler himself, rather than some other employee of World Jet, uttered the libelous and disparaging statements. But since World Jet was the alter ego of Kasler, all employees of World Jet are considered to have been employees of Kasler. Thus, if the statements were willful and malicious, agency principles would make the liability non-dischargeable as to Kasler even if he did not personally make the statements. He would still be "liable" for them as an employer, and the injuries suffered by Piaggio would still be "willful and malicious injuries." See McIntyre v. Kavanaugh, 242 U.S. 138, 142, 37 S.Ct. 38, 61 L.Ed. 205 (1916), Aff'g 210 N.Y. 175, 183, 104 N.E. 135, 137 (1914) (partners). And if the statements were made not by an ordinary employee but by Kasler's son, his co-alter-ego and "partner," Kasler would be non-dischargeably liable by direct application of McIntyre
 
 
 [4]
 In such a case the bankruptcy court's findings are actually legal conclusions, not findings of fact. 568 F.2d at 657 (Hufstedler, J., concurring and dissenting)
 
 
 [5]
 Piaggio would interpret this statement essentially to include all acts that are not involuntary. This is wrong; "willful" refers to state of mind, not to motor control
 
 
 [6]
 Appellant relies on another passage from Tinker :
 (W)e think a willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the exception.
 193 U.S. at 487, 24 S.Ct. at 509. This passage, however, is only a definition of the "malice" element and does not purport to define the word "willful," as can be seen when one recasts it as
 (W)e think a willful . . . (malicious act) . . . may be said to be done willfully and maliciously, so as to come within the exception.
 Therefore this passage is irrelevant to our present examination of willfulness.
 
 
 [7]
 Some cases involving personal injury liabilities arising out of automobile accidents have refused under this section to discharge debts based on reckless or even negligent conduct. We would be inclined to limit those cases to situations involving "intentional disregard of human life," Greenfield v. Tuccillo, 129 F.2d 854, 856 (2d Cir. 1942), or "reckless indifference to the safety of human life," 8 Remington on Bankruptcy § 3329, at 195 (6th ed. 1955). Obviously the libel and trade disparagement in this case involved no danger to human life
 In the legislative history accompanying the Bankruptcy Act of 1978, Congress made it unmistakable that only deliberate or intentional acts should be considered "willful," and that mere reckless disregard did not qualify. H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977), Reprinted in (1978) U.S.Code Cong. & Admin.News, at 5787, 6320-21; S.Rep. No. 989, 95th Cong., 2nd Sess. 79, Reprinted in (1978) U.S.Code Cong. & Admin.News, at 5787, 5865. However, the new Bankruptcy Act, which this Congressional intent informed, is not involved in this case.