**In re Elmer Lawson RUDD aka Lawson Rudd, Debtor**

**The ESTATE OF Edward SCHUBERT, Deceased, and David Schubert, Plaintiffs,**

v.

**Elmer Lawson RUDD aka Lawson Rudd, Defendant.**

**Bankruptcy No. 85–60413.**
**Adv. No. 85–6041.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division,
at Lafayette.

Jan. 8, 1987.

---

Thomas Scully, Munster, Ind., for defendant.

Robert Schwerd, Highland, Ind., for plaintiffs.

KENT LINDQUIST, Chief Judge.

### MEMORANDUM OPINION AND ORDER[1]

#### I

##### *Statement of Proceedings*

On April 12, 1985, the Plaintiffs filed their complaint versus the Defendant in the above adversary proceeding praying that a certain order or judgment entered in favor of the Plaintiffs versus the Defendant in the Lake Superior Court, Room Two, under Cause No. 79–138 captioned "In the Matter of the Estate of Edward Schubert, Deceased", on November 15, 1984 in the sum of $5,250.00 in compensatory damages and $3,000.00 in punitive damages be determined to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(6), and also praying for attorney's fees and interest.

On May 15, 1985, the Defendant filed an answer and pursuant to order of this Court on July 30, 1985, a pre-trial conference was held on August 29, 1985.

The parties stipulated that the state court order (judgment) was entered after a trial on the merits and thus there is a threshold legal issue to be resolved as to whether the state court order or judgment should have one of the following effects upon this dischargeability proceeding: 1) The doctrine of res judicata or claim preclusion as to the issue of non-dischargeability should be applied and no further evidence need be taken by this Court to render its judgment based on the state court judgment; 2) The state court judgment is not res judicata as to the issue of non-dischargeability but the doctrine of collateral estoppel or issue preclusion should apply and this court should base its conclusions of law as to non-dischargeability solely on the record and findings of fact in the state court proceedings; 3) This Court should deny res judicata (claim preclusion) and collateral estoppel (issue preclusion) effect to the order or judgment and relitigate all of the factual issues raised in the state court; or, 4) This Court may take additional evidence in this adversary proceeding and based on its findings of fact as to that evidence together with giving the findings of facts and the record in the state court judgment evidentiary rather than collateral estoppel status, reach its legal conclusions as to whether the underlying debt is non-dischargeable.

The parties briefed the issue, Plaintiff filing its brief on September 30, 1985, the Defendant filing its brief on November 29, 1985, and the Plaintiff filing its reply brief on December 9, 1985.

---

1. This Order constitutes the Court's Finding of Fact and Conclusions of Law pursuant to Fed.R. Civ.P. 52 as made applicable by Bankruptcy Rule 9014 and 7052.

## II

### *Findings of Fact*

The state court order or judgment upon which the Plaintiffs base their nondischargeability complaint made the following findings of fact:

1. That Edward Schubert (hereinafter: "decedent") died March 27, 1979 having owned certain real estate (hereinafter: "property").

2. That subsequently thereto, pursuant to court order the property was sold to decedent's nephew and his wife, and an order was entered approving the report of sale on October 5, 1979.

3. That on October 30, 1979, the Defendant filed his petition for specific performance of a contract to sell said property with the decedent.

4. That there was no credible evidence that decedent had entered into any such contract with the Defendant; that, the document admitted into evidence by the Defendant purporting to be an agreement between himself and the decedent did not bear the decedent's signature; and, that the testimony of two of the Defendant's witnesses that testified the decedent acknowledged the sale was not credible.

5. That the Defendant caused a survey of the property to be made which was dated May 30, 1978.

6. That some time on or about the date of the survey the Defendant, by his own admission, began filling in the property with fill of any kind, much of which consisted of large chunks of cement, asphalt and debris.

The Court in its conclusions of law found that neither the document nor the parol evidence submitted by the Defendant satisfied the Indiana Statute of Frauds (I.C. 32–2–1–1 et seq.), and therefore the Court adjudged that the Defendant as petitioner take nothing by his petition and that the Plaintiffs herein (defendants in the state

action) recover from the Defendant on their counter-claims the sum of $5,250.00 in compensatory damages and $3,000.00 in punitive damages but denied any award of attorney's fees. A copy of the counterclaim was not submitted by the parties.

No indication was given as to how the damages were computed by the state court.

## III

### *Conclusions of Law*

No objections were made by the parties to the jurisdiction of this court and the Court finds this is a core proceeding pursuant to 28 U.S.C. § 157.

11 U.S.C. § 523(c) grants to the bankruptcy court exclusive jurisdiction to determine whether or not a debt is non-dischargeable under sections 523(a)(2), (4) and (6) of the Bankruptcy Code.

The bankruptcy courts have struggled with the applicability of the doctrines of res judicata or claim preclusion and collateral estoppel or issue preclusion as to a state court judgment vis-a-vis the clear congressional intent that exclusive jurisdiction vests in the bankruptcy court to determine the dischargeability of a debt, when one party to the state court judgment asserts in an adversary proceeding filed in the bankruptcy court under 11 U.S.C. § 523(c), that the prior state judgment between the parties precludes further litigation or obviates further litigation in the bankruptcy court on the issue of its non-dischargeability.

The phrases "res judicata" and "collateral estoppel" have been assigned a variety of meanings by the courts in many different contexts and their use has often resulted in only increasing the confusion as to when these doctrines are properly applicable. Accordingly, this Court will not use these terms but will use the term "claim preclusion" in lieu of "res judicata" and the term "issue preclusion" in lieu of the term "collateral estoppel".[2]

2. As set forth in the Supreme Court's decision in *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 77, n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984): "The preclusive

effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects

The reader should thus also be aware that many of the decisions referred to herein do not make reference to the preclusion terminology, but use the terms res judicata and collateral estoppel and thus these variances in terminology must be kept in mind in analyzing these cases.

The general principles of claim preclusion and issue preclusion and their purposes should be first noted. These doctrines serve a multitude of purposes. They encourage reliance upon judicial decisions by preventing inconsistent decisions; they conserve the resources of the Courts and the litigants; they promote comity between the state and federal courts; and, they ensure judicial finality. *See,* Ferrell, *The Preclusive Effect of State Court Decisions in Bankruptcy,* First Installment, 58 Amer.Bankr.L.R. 349, 351 (1984).

One frequently quoted definition of the basic Rule of Claim Preclusion is from the United States Supreme Court's opinion in *Commissioner v. Sunnen:*

> The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac,* 94 U.S. 351, 352 [, 24 L.Ed. 195] ... [1876]. The judgment puts an end to the cause of action, which cannot again

be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.

*Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948).

As opposed to claim preclusion, issue preclusion prevents litigation by parties to a previous action of issues that have been "actually and necessarily determined by a court of competent jurisdiction...." *Montana v. United States,* 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1977). As the Supreme Court noted in *Southern Pacific Railroad Company v. United States:*

> The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.

*Southern Pacific Railroad Co. v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897).

The *Restatement (Second) of Judgments* defines issue preclusion in the following terms:

---

are referred to collectively by most commentators as the doctrine of 'res judicata'. Res judicata is often analyzed further to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion'. Issue preclusion refers to the effects of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar. This Court on more than one occasion has used the term 'res judicata' in a narrow sense, so as to, exclude issue preclusion or collateral estoppel. When using that formulation, 'res judicata', becomes virtually synonomous

with 'claim preclusion.' In order to avoid confusion resulting from the two uses of 'res judicata', this opinion uses the term 'claim preclusion' to refer to the preclusive effect of a judgment in foreclosing relitigation of matters that should have been raised in an earlier suit." (Citations omitted). In the subsequent case of *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 1329 n. 1, 84 L.Ed.2d 274 (1985), the Supreme court continued the same use of this terminology: "In this opinion, we used the term 'claim preclusion' to refer to 'res judicata' in a narrow sense, *i.e.,* the preclusive effect of a judgment in foreclosing 'litigation of matters that should have been raised in an earlier suit. In contrast, we used the term 'issue preclusion' to refer to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided."

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*Restatement (Second) of Judgments,* § 27 (1982).

Thus, issue preclusion is more limited than claim preclusion as issue preclusion only applies to individual legal and factual issues and not to an entire cause of action.

In the context of prior state court judgments and their non-dischargeability in bankruptcy, the Supreme Court in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), has spoken as to claim preclusion or *res judicata* and denied claim preclusion effect to state court judgments in bankruptcy dischargeability litigation. The issue in *Brown v. Felsen, supra,* was whether the bankruptcy court could consider evidence extrinsic to the judgment and record of a prior state court action to recover monies when determining whether an indebtedness previously reduced to judgment was dischargeable under 11 U.S.C. § 35 of the Act (now 11 U.S.C. § 523(a)(2)(A)). The State Court suit was settled by stipulation and neither the stipulation nor the judgment set out the cause of action upon which the bankrupt's liability was based. The creditor sought to establish that the debtor's judgment debt to him was nondischargeable since the debt was allegedly the product of fraud and malicious conversion. The Debtor-bankrupt argued that the prior state court proceeding did not result in a finding of fraud, and contested that *res judicata* barred relitigation of the nature of his debt. The Court held that the doctrine of *res judicata* does not prevent a bankruptcy court from going behind a state court judgment to determine whether a debt is non-dischargeable. The Court held that Congress intended the bankruptcy court resolve these types of dischargeability issues and that by limiting the application of claims preclusion, the bankruptcy court would weigh the evidence and make the final determination

as to whether the Debtor committed fraud or conversion. *Id.* 442 U.S. at 138, 99 S.Ct. at 2212, 60 L.Ed.2d at 775.

The *Brown* Court stated that if *res judicata* were to apply, it would force the consolidation of claims in the state court which would "undercut a statutory policy of resolving § 17 questions in bankruptcy court, and would force state courts to decide these questions at a stage when they are not directly in issue and neither party has a full incentive to litigate them." *Id.,* 442 U.S. at 134, 99 S.Ct. at 2211, 60 L.Ed.2d at 773. The Court also stated that, "neither the interests served by *res judicata,* the process of orderly adjudication in state court, nor the policies of the Bankruptcy Act would be well served by foreclosing the petitioner from submitting evidence to prove his case." *Id.,* 442 U.S. at 132, 99 S.Ct. at 2210, 60 L.Ed.2d at 772. The *Brown* Court also made the following commentary on the 1970 Amendments to Section 17:

If a state court should expressly rule on § 17 questions, then giving finality to those rulings would undercut Congress' intention to commit § 17 issues to the jurisdiction of the bankruptcy court. The 1970 amendments eliminated post-bankruptcy state court collection suits as a means of resolving certain § 17 dischargeability questions. In those suits, creditors had taken advantage of debtors who were unable to retain counsel because bankruptcy had stripped them of their assets. Congress' primary purpose was to stop that abuse. A secondary purpose, however, was to take these § 17 claims away from state courts that seldom dealt with the federal bankruptcy laws and to give those claims to the bankruptcy court so that it could develop expertise in handling them. By the express terms of the Constitution, bankruptcy law is federal law, U.S. Const., Art. I, § 8, cl. 4, and the Senate Report accompanying the amendment described the bankruptcy court's jurisdiction over these § 17 claims as "exclusive." S.Rep. No. 91–1173, p. 2 (1970). While Congress did not expressly confront the problem created by prebankruptcy state-court ad-

judications, it would be inconsistent with the philosophy of the 1970 amendments to adopt a policy of res judicata which takes these § 17 questions away from bankruptcy courts and forces them back into state courts. *See In re McMillan,* 579 F.2d 289, 293 (CA3 1978); *In re Houtman,* 568 F.2d 651, 654 (CA9 1978); *In re Pigge,* 539 F.2d, at [369] 371 [CA4 1976]; 1 D. Cowans, Bankruptcy Law and Practice § 253, p. 298 (1978). Compare 1A J. Moore, J. Mulder, & R. Oglebay, Collier on Bankruptcy ¶ 17.16[6], p. 1650.1 n. 50 (14th ed. 1978) (1970 Act), with *id.,* ¶ 17.16[4], p. 1643 (prior state law).

*Id.,* 442 U.S. at 135–137, 99 S.Ct. at 2211–22, 60 L.Ed.2d at 774–75.

The Courts have consistently applied the holding in the *Brown* case in dischargeability proceedings under 11 U.S.C. § 523(c). *See, e.g., In re Johnson,* 691 F.2d 249 (6th Cir.1982); *Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980); *In re Goodman,* 25 B.R. 932 (Bankr.N.D.Ill.1982); *In re Spector,* 22 B.R. 226 (Bankr.N.D.N.Y. 1982); *In re Dohm,* 19 B.R. 134 (Bankr.N. D.Ill.1982).

It should be noted that the *Brown* case, did not involve the issue of whether issue preclusion or collateral estoppel effect should be given to a prior state court judgment by the bankruptcy court in the non-dischargeability context but the Court indicated that collateral estoppel could be applicable leaving the question open. As the Court stated:

This case concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions *actually and necessarily decided in a prior suit. Montana v. United States,* 440 U.S. 147, 153, 59 L.Ed.2d 210, 99 S.Ct. 970 [973] (1979); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 58 L.Ed.2d 552, 99 S.Ct. 645 [649 n. 5] (1979); *Cromwell v. County of Sac,* [4 Otto 351], 94 U.S. 351, 352–353, 24 L.Ed. 195 (1877). *If, in the course of adjudi-*

*cating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.* (Emphasis added).

*Brown v. Felsen,* 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10, 60 L.Ed.2d at 776 n. 10.

To resolve this issue a close analysis of the United States Constitution, the Bankruptcy Code and the Full Faith and Credit Statute, 28 U.S.C. § 1738, is required.

Article I, § 8, cl. 4 of the United States Constitution mandates that Congress establish "uniform laws on the subject of Bankruptcy throughout the United States." Congress chose to implement that clause by enacting 11 U.S.C. § 523(c) which grants to the bankruptcy court *exclusive* jurisdiction over exceptions to discharge based on 11 U.S.C. § 523(a)(2) (false representations, false pretenses and actual fraud); § 523(a)(4) (fraud or defalcation in a fiduciary capacity, embezzlement or larceny); and, § 523(a)(6) (willful or malicious injury to another entity).

This exclusive jurisdiction was originally vested in the bankruptcy courts by the 1970 amendments to the Bankruptcy Act of 1898 then in effect. The 1898 Act and its amendments were superseded by the Bankruptcy Act of 1978, which basically did not change the previous law. The purposes in granting exclusive jurisdiction were to ensure consistency of application of federal law that would be obtained by having judges with expertise in bankruptcy law pass on dischargeability questions and to further the bankruptcy "fresh start" policy by protecting debtors against harassing law suits initiated by creditors after bankruptcy and to perhaps protect unwitting waivers of the debtor's discharge. For a discussion of the historical background and purpose of § 523(c) and its predecessor, *see,* Ferrell, *The Preclusive Effect of State Court Decisions in Bankruptcy,* Second Installment, 59 Amer.Bankr.L.J. 55, 56–59 (1985).

In addition, the Full Faith and Credit Clause of the United States Constitution, Art. IV, § 1, was implemented by 28 U.S.C. § 1738, the relevant portions of which provide as follows:

The ... judicial proceedings of any court of any state ... shall have the same full faith and credit in every court within the United States and its territories and possessions as they have by law or usage in the courts of such state.

The Supreme Court in examining the "full faith and credit clause" and 28 U.S.C. § 1738 has stated, "a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered". *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 896 104 S.Ct. 892, 896, 79 L.Ed.2d 56, 63 (1984). *See also, Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *McDonald v. West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

*In Marrese* the Court noted:

The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings, "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered.

*Marrese v. Academy of Orthopaedic Surgeons*, 470 U.S. 373 at 380, 105 S.Ct. 1327 at 1331–32, 84 L.Ed.2d 274 at 281.

However, the determination of state issue preclusion rules is a very difficult and complicated matter and as the Chief Justice in his concurring opinion in *Marrese*, stated:

[N]o guidance is given as to how the District Court should proceed if it finds state law silent or indeterminate on the claim preclusion question. The Court's refusal to acknowledge this potential problem appears to stem from a belief that the jurisdictional competency requirement of *res judicata* doctrine will dispose of most cases like this.

*Id.* 105 S.Ct. at 1336

The Supreme Court in *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308, 314 (1980), indicated that only a clear congressional intent contrary to 28 U.S.C. § 1738 will permit a federal court to deny the preclusive effect of a state court judgment. In *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 467, 102 S.Ct. at 1890, 72 L.Ed.2d at 271, the Supreme Court stated, "an exception to § 1738 will not be recognized unless a later statute contains an express or implied partial repeal ... Repeals by implication are not favored." The Court gave as an example of clear intent the federal habeas corpus statute, 28 U.S.C. § 2254. The Court in *Kremer* also stated, "§ 1738 does not allow federal courts to employ their own rules of *res judicata* in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept rules chosen by the state from which the judgment is taken", *Id.* 456 U.S. at 481, 102 S.Ct. at 1898, 72 L.Ed.2d at 280.

It appears however, that the general rules as set out above have been ignored by the federal courts in bankruptcy cases relating to the issue of nondischargeability and the effect of prior state litigation. "Instead the bankruptcy courts have applied federally developed rules of issue preclusion often without acknowledgment of the customary practice," Ferrell, *The Preclusive Effect of State Court Decisions in Bankruptcy*, First installment, 58 Amer. Bankr.L.J. 349, 357 (1985).

The general test most frequently applied by the bankruptcy courts is found in *In re Ross*, 602 F.2d 604, 5 B.C.D. 700 (3rd Cir. 1979). *Ross* sets out a four point test before the doctrine of issue preclusion or collateral estoppel can bar the relitigation

of a dischargeability issue. This test is as follows:

1. The issue sought to be precluded must be the same as that in the prior action;

2. The issue must have been actually litigated;

3. The issue must have been determined by a valid and final judgment; and

4. The determination must have been essential to the judgment.

*Id.* 602 F.2d at 608.

The Court in *Ross* held that the Bankruptcy Court must carefully review the record in the prior case and hold a hearing at which the parties have an opportunity to present evidence to determine whether these standards have been met.

This test is similar to the one set out in *Restatement (Second) of Judgments* § 27 (1982).

There are minor differences in this federal test among the various circuits, but the *Ross* criteria appears to be the most frequently utilized. *See, e.g., Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981); *In re Carothers,* 22 B.R. 114, 119 (Bankr.D.Minn. 1982); *United States Life Title Ins. Co. v. Dohm,* 19 B.R. 134, 137 (N.D.Ill.1982); *In re Supple,* 14 B.R. 898, 899 (Bankr.D.Conn. 1981). The most difficult part of the test is the "identity of issue" requirement, as the Court in *In re Supple* stated:

> [a] bankruptcy court cannot give collateral estoppel effect to a prior state court adjudication if the issue before the bankruptcy court differs from the issue which was before the state court. The standards employed by the state court in reaching its decision must comport with federal standards. To insure such an identity of standards, a bankruptcy court must scrutinize the entire record of the state court proceedings.

*Id.* at 904.

It should also be noted that the party seeking to assert collateral estoppel has the burden of proving all the requisites for its application. *Spilman v. Harley,* 656 F.2d 224, 229, *supra, In re Spector,* 22 B.R. 226, 231 (N.D.N.Y.1982). Any reasonable doubt as to what should be decided should be resolved against using it as estoppel. *Id.*

The Seventh Circuit has not addressed the application of the doctrine of collateral estoppel to bankruptcy cases as it relates to the issue preclusion effect of a state court judgment in a subsequent nondischargeability proceeding as of the date of this opinion.

There are numerous difficulties in giving the findings of fact of a state court judgment issue preclusive effect in a bankruptcy court dischargeability proceeding.

First, the standard of proof may be different. The bankruptcy courts generally, including this Court, require that the plaintiffs prove his case by clear and convincing evidence when asserting a debt is not dischargeable pursuant to 11 U.S.C. § 523(a)(2), (4) and (6). *See, In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985) where the Seventh Circuit Court of Appeals held that a party objecting to dischargeability based on fraud must establish each element of the claim by clear and convincing evidence. This higher and more exacting standard of proof is also applicable in a proceeding under 11 U.S.C. § 523(a)(4) for fraud or defalcation in a fiduciary capacity, embezzlement or larceny or 11 U.S.C. § 523(a)(6) for willful and malicious injury to person or property. *See, e.g., In re DeRosa,* 20 B.R. 307, 311, NN. 3 & 4 (Bankr.S.D.N.Y.1982). This is a higher standard of proof than a fair preponderance of evidence normally applied by the state court, and it is not always clear what standard the state court has in fact applied.

The case law in Indiana generally, as to the standard of proof in civil actions for intentional torts, such as fraud or conversion, is that the claimant has the burden of proof and the right to prevail must be shown by a fair preponderance of the evidence rather than the higher standard of clear and convincing evidence required in a bankruptcy setting. *See, e.g., Grissom v. Moran,* 154 Ind.App. 419, 290 N.E.2d 119, *Reh'rg Denied* 154 Ind.App. 432, 292 N.E.2d 627 (1972) (fraud action); *Bissell v. Wert,* 35 Ind. 54 (Ind.1871) (conversion).

However, the Indiana Courts have recently added an exception to the above general rule. In the *Travelers Indemnity Company v. Armstrong*, 442 N.E.2d 349, 362, 363 (Ind.1982), the Indiana Supreme Court held that proof by clear and convincing evidence is required when punitive damages are sought. This case involved an action by an insured versus an insured on an insurance policy. The Court noted that:

> [p]unitive damages should not be allowable upon evidence that is merely consistent with the hypothesis of malice, fraud, gross negligence or oppressiveness. Rather some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing....

> The propriety of the clear and convincing evidence standard is particularly evident in contract cases, because the breach itself for whatever reason, will almost invariably be regarded by the complaining party as oppressive, if not outright fraudulent.

> *Id.*

This standard of proof in awarding punitive damages was extended by the Indiana Court of Appeals, Fourth District, in the case of *Orkin Exterminating Co. v. Traina*, 461 N.E.2d 693, 697–698 (Ind.App.4th Dist.1984), where the Court held that the clear and convincing standard of proof also applied to "all punitive damage cases whether they are tortious breach of contract or pure tort cases." *Id.* at 698. The Court stated:

> To be substantial and of probative value as to a punitive damages award, the evidence must be clear and convincing, that is, there must be some evidence (a) of malice, fraud, gross negligence or oppressive conduct mingled in the breach in tortious breach of contract cases or of malicious, reckless or wilful and wanton misconduct in pure tort cases, and (b) the tortious conduct is inconsistent with a hypothesis of mere negligence, mistake

of law or fact, over-zealousness, or other noniniquitous human failing.

> *Id.* at 698.

The Indiana Supreme Court on petition to transfer in the *Orkin* case reversed on other grounds but agreed with the holding of the Court of Appeals as to the standard of proof in assessing punitive damages in tort cases and stated as follows:

> The Court of Appeals was correct in determining that the *Armstrong* clear and convincing evidence rule applies in pure tort cases as well as in those rare breach of contract cases where it is clear that the breach contained "elements that enable the court to regard them as falling within the field of tort or as closely analogous thereto, ...

> *Orkin Exterminator Co., Inc. v. Traina*, 486 N.E.2d 1019, 1021 (Ind.1986).

Accordingly, if an Indiana State Court in entering a money judgment awards punitive damages, that court is theoretically compelled by Indiana Law pursuant to the *Armstrong* and *Orkin* cases, *supra*, to find that the prevailing party has submitted clear and convincing evidence to justify such an award.

Thus, the standard as to the burden of proof to be applied by the state court would be the same as is required by the bankruptcy court in making a finding of a subsidary ultimate fact in a nondischargeability proceeding. As a consequence, if such a fact issue were *actually litigated* and *necessarily decided* in the state court and the court applied the higher standard of proof of clear and convincing evidence rather than that of by a fair preponderance of the evidence and awarded punitive damages those findings of fact *could* have issue preclusive (collateral estoppel) effect in the bankruptcy proceeding. However, as can be seen from the discussion below regarding the various differences between Indiana and Federal Bankruptcy Law as to fraud, conversion, etc., the mere fact that the state court applied the standard of clear and convincing evidence and awarded punitive damages does not mean that the findings of fact necessarily include findings of fact that the conversion was "wilful and

malicious" as required by § 523(a)(6) or that the fraud was actual or positive as required by § 523(a)(2)(A).

The elements of the state cause of action such as fraud or conversion may be different than those necessary to have a claim be determined as nondischargeable pursuant to 11 U.S.C. § 523(c). As pointed out by the Court in *In re Rainey*, 1 B.R. 569, 570 (Bankr.D.Ore.1979):

> This Court is permitted—and indeed may be required—to look behind a lower court judgment in determining dischargeability. *In re Houtman*, 568 F.2d 651 (9th Cir.1978); *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767, 5 B.C.D. 226 (1979); *In re Stokke*, No. B71–3601 (B.Ct.Oregon 1972). Underlying considerations for discharge in bankruptcy are different from those for common law negligence and intentional torts; inquiries and findings necessary for the two types of actions frequently may differ. *See Brown v. Felsen, supra* 99 S.Ct. at 2213, 5 B.C.D. at 229–30.

It has been repeatedly held that whether a debt is dischargeable in bankruptcy is a question of federal law and state law is not applicable. *See, Matter of Pappas*, 661 F.2d 82 (7th Cir.1981). Although this was an Act case interpreting the predecessor to 11 U.S.C. § 523(a)(2) (11 U.S.C. § 35(a)(2)), there have been only slight changes between the Act and the Code and the foregoing statement continues to correctly state which law is applicable under the 1978 Code. *See, Birmingham Trust National Bank v. Case*, 755 F.2d 1474 (11th Cir.1985), where it was held that because of the negligible differences, case law under the Act serves as a useful guide under the 1978 Code. Other courts construing the 1978 Code have consistently held that the question of whether a debt is dischargeable in bankruptcy is one of federal law. *See, e.g., In re Marini*, 28 B.R. 262, 264 (Bankr. E.D.N.Y.1983); *In re Tapp*, 16 B.R. 315 (Bankr.D.Alaska 1981); *In re Sadwin*, 15 B.R. 884, 886 (D.M.D.Fla.1981); *In re Liberati*, 11 B.R. 54 (Bankr.E.D.Pa.1981). While the case at bar involves an allegation that the debt is nondischargeable based on

wilful and malicious injury pursuant to 11 U.S.C. § 523(a)(6), rather than fraud pursuant to 11 U.S.C. § 523(a)(2) the above statement that nondischargeability is based on federal law is equally applicable.

The statutory elements that need to be proven under § 523(a)(2), (4) and (6) and the federal case law construing the same will often not be the same as is necessary to assess liability in the state court based on the same set of facts. For instance, while a debtor may be liable in damages for a mere technical conversion in the state court, § 523(a)(6) expressly requires that such a conversion be both "wilful and malicious" in order for a debt to be held nondischargeable. *Compare, Noble v. Moistner*, 180 Ind.App. 414, 388 N.E.2d 620, 621 (Ind. App.4th Dist.1979), where conversion is defined as the " 'appropriation of property of another to the party's own use and benefit, or in its destruction, or in exercising dominion over it, in exclusion and defiance of the rights of the owner or lawful possessor, or in withholding it from his possession, under a claim and title inconsistent with the owner's.' "

The application of this definition is clearly not sufficient in a nondischargeability proceeding under § 523(a)(6) in which the claimant must show conjunctively that the actions of the debtor were "intentional *and* malicious" and where a mere technical conversion may be dischargeable, where it is not shown the same was wilful and malicious. *See, e.g., Matter of Conner*, 59 B.R. 594, 596 (Bankr.W.D.Mo.1986). *See also*, 3 *Collier on Bankruptcy* ¶ 523.16 (pp. 511–514) (L. King 15th Ed.), where it discusses the fact that the 1978 Code overruled many previous Act cases holding various degrees of recklessness as being wilful and malicious and that a deliberate and intentional act is necessary.

The same can be said of a state fraud action. In Indiana, the claimant can prove that the fraud is either actual or constructive. Under Indiana law "constructive fraud" is fraud that arises by operation of law from conduct, which if sanctioned by law, would secure an unconscionable advantage. *Whiteco Properties, Inc. v.*

*Theilbar,* 467 N.E.2d 433 (Ind.App.3rd Dist.1984); *See also, Abdulrahim v. Gene B. Glick Co., Inc.,* 612 F.Supp. 256 (N.D. Ind.1985); *Crook v. Shearson Loeb Rhoades, Inc.,* 591 F.Supp. 40 (N.D.Ind. 1983).

This is to be compared with the clear legislative intent of the provisions of § 523(a)(2)(A). The relevant legislative statements are as follows:

> [t]hus, under section 523(a)(2)(A) a creditor must prove that the debt was obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insiders financial condition. Subparagraph (A) is intended to codify current case law e.g., *Neal v. Clark,* 95 U.S. 704 [, 24 L.Ed. 586] (1887), which interprets "fraud" to mean actual or positive fraud rather than fraud implied in law. Subparagraph (A) is mutually exclusive from subparagraph (B). Subparagraph (B) pertains to the so-called false financial statement. . . .

124 Cong.Rec. H11095–96 (Daily Ed. Sept. 28, 1978); S17412 (Daily Ed. Oct. 6, 1978). Reprinted in 4 *Norton Bankruptcy Law and Practice,* Annotated Legislative History, § 523, page 397 (Callaghan and Company, 1983).

The Courts have consistently held in construing § 523(a)(2)(A) that there must be proof of positive fraud and this involves showing that the acts which constitute fraud involved moral turpitude or an intentional wrong; and fraud implied in law which does not require a showing of bad faith or immorality is insufficient. *See, e.g., In re Gilman,* 31 B.R. 927, 929 (Bankr.S.D.Fla.1983); *In re Slutzky,* 22 B.R. 270, 271 (Bankr.E.D.Mich.1982); *In re Montbleau,* 13 B.R. 47, 48 (Bankr.D.Mass. 1981); *In re Byrd,* 9 B.R. 357, 359 (Bankr. D.C.1981); *In re McAdams,* 11 B.R. 153, 155 (Bankr.D.Vt.1980).

Thus, from the mere fact that a state fraud or conversion case is fully tried on its merits and judgment entered, it does not follow that the Court's finding of fact in such a case (assuming that Court used the clear and convincing evidence standard dis-

cussed above) would collaterally estop or operate as issue preclusion in a subsequent nondischargeability proceeding in the Bankruptcy Court as for example, the evidence might show, that although the court found fraud the finding of fraud may have really been a finding of constructive fraud or fraud implied-in-law as opposed to actual or constructive fraud or that the finding of conversion was really based on a technical conversion or gross negligence which would be dischargeable in the bankruptcy proceeding.

This Court has examined the various positions taken by the courts regarding issue preclusion in the context of bankruptcy nondischargeability proceedings. Lower Courts before and after *Brown* have approached the issue in various ways. A leading pre-*Brown* case was in *In re Houtman,* 568 F.2d 651, 3 B.C.D. 1403 (9th Cir.1978). There the Court held that collateral estoppel may not be applied in determining the dischargeability of debts, and the bankruptcy court must consider all relevant evidence, including state court proceedings. The Court stated:

> The 1970 Amendments to the Bankruptcy Act imposed upon the bankruptcy courts the exclusive jurisdiction to determine dischargeability. As we read those Amendments there is no room for the application of the technical doctrine of collateral estoppel in determining the nondischargeability of debts described in section 17(a)(2), (4), and (8) of the Bankruptcy Act.

*In re Houtman,* 568 F.2d at 653, 3 B.C.D. at 1404.

The *Houtman* Court added at 568 F.2d at 653 N. 2, 3 B.C.D. at 1404, N. 2 as follows:

> We acknowledge that a grant of exclusive jurisdiction to federal courts does not automatically preclude the application of the doctrine of collateral estoppel. *Becher v. Contoure Laboratories,* 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752 (1928); *cf. Clark v. Watchie,* 513 F.2d 994 (9th Cir.), *cert. denied,* 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975). However, we believe that collateral estoppel

is inappropriate when "a new determination is warranted ... by factors relating to the allocation of jurisdiction between [the two courts]." Restatement 2d of Judgments § 68.1(c) [Tent. Draft No. 4, 1977]; *cf. Lyons v. Westinghouse Electric Corp.*, 222 F.2d 184 (2d Cir.), *cert. denied*, 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955) (refusal to give collateral estoppel effect to state court finding of no antitrust violation because of need for "an untrammeled jurisdiction of the federal courts." *Id.* [222 F.2d] at 189).

Congress, in enacting the 1970 Amendments to the Bankruptcy Act, felt that

One of the strongest arguments in support of the bill is that, ... a single court, to wit, the bankruptcy court, will be able to pass upon the question of dischargeability of a particular claim and it will be able to develop an expertise in resolving the problems in particular cases.... Since this is a Federal statute, the Federal courts necessarily have the final word as to the meaning of any term contained therein. S.Rep. No. 91–1173, 91st Cong., 2d Sess. (1970) at 9.

To give collateral estoppel effect to prior state court factual findings would impair the exercise of the expertise of the bankruptcy court. The determination of nondischargeability should remain an exclusive function of the bankruptcy court unimpeded by the refinements of collateral estoppel by state court judgments.

The *Houtman* decision was followed in *In re Rahm*, 641 F.2d 755, 757 (9th Cir. 1981) *cert. denied sub. nom. Gregg v. Rahm*, 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 without directly citing *Houtman* where the Court held a prior state judgment has no collateral estoppel force on a bankruptcy court considering dischargeability unless both parties agree to rest their case on that judgment. The Court went on to state that at most, a prior judgment establishes a *prima facie* case of nondischargeability which the bankrupt is entitled to refute on the basis of all relevant evidence, citing *Matter of Kasler*, 611 F.2d 308, 309 (9th Cir.1979) which held that in an ordinary case a prior state judgment would not be res judicata or have collateral estoppel effect in a bankruptcy court, because bankruptcy courts have exclusive jurisdiction to determine dischargeability. *See also, In re Daley*, 776 F.2d 834, 838 (9th Cir.1985), *cert. denied sub. nom., Daley v. Frank*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). There the Court held that the doctrine of issue preclusion did not bar creditors from relitigating the issue of nondischargeability based on fraud where a dismissal with prejudice was entered by stipulation in that the fraud claims were never actually litigated and the creditors obtained judgment on their contract claims only.

The United States Bankruptcy Appellate Panel of the Ninth Circuit in the case of *In re DiNoto*, 46 B.R. 489, 491 (B.A.P. 9th Cir.1984) in citing *Kasler* and *Houtman, supra*, held that where the bankruptcy court has exclusive jurisdiction in actions to determine dischargeability, state judgments are not *res judicata* and do not have collateral estoppel effect because of the Bankruptcy Court's exclusive jurisdiction. The Court went on to state that the foregoing rule applies to stipulated judgments as well as those that result from a trial.

This Court also believes that the *DiNoto* Court also correctly distinguished the holding of the Ninth Circuit Court of Appeals in *In re Comer*, 723 F.2d 737 (9th Cir.1984) which held that a state court determination of the *amount* of liability can be binding in a dischargeability action in that *Comer* involved state spousal and child support judgments. The *Comer* Court held that the litigant had full incentive to litigate and did fully litigate the issue in the state court. Secondly, the *Comer* Court noted that the amount in controversy, i.e. the issue of damages, would be identical under both state law and bankruptcy dischargeability law as compared to a fraud action which may have a different measure of damages or require a different quantum of proof. The *DiNoto* Court also correctly noted a third grounds for distinguishing *Comer*, i.e. that as opposed to discharge-

ability proceedings under § 523(c) where the bankruptcy court has exclusive jurisdiction, it is generally recognized that state courts have concurrent jurisdiction with the bankruptcy courts over dischargeability proceedings arising under § 523(a)(5) relating to family support. *In re DiNoto*, 46 B.R. 489, 491 N. 1, *supra, accord: Goss v. Goss*, 722 F.2d 599 (10th Cir.1983).

The Fifth Circuit in the case of *Carey Lumber Company v. Bell*, 615 F.2d 370, 377 (5th Cir.1980), held that a bankruptcy court, when faced with a nondischargeability claim evidenced by a state court judgment, is not barred by *res judicata* or collateral estoppel from conducting appellate inquiry into the character and ultimately the dischargeability of the debt citing *In re Houtman, supra.* The *Carey* Court went on to hold that when a bankruptcy judge is presented with a state court consent judgment which contained rather detailed recitations of findings of fact which closely paralleled the language of the Bankruptcy Act's dischargeability exception for fraud, the bankruptcy judge properly considered those judgments in connection with a motion for summary judgment. Thus the *Carey* Court treated the state court judgment as evidence, and thus of less weight than the *Houtman* Court which indicated that the state court judgment established a *prima facie* case.

The Court notes that there are three types of state court judgments that can be entered and which either party may attempt to assert as forming a basis for issue preclusion or collateral estoppel in the bankruptcy dischargeability proceeding. These are 1) Default judgment or confession of judgment; 2) Stipulated or agreed judgment; 3) Judgment by the Court after an actual trial litigating the merits.

As to a default or confessed judgment or an agreed or stipulated judgment, the courts have been rather uniform in denying not only claim preclusion effect but also issue preclusion effect to such a judgment in the bankruptcy court. The issue to be precluded must be *actually* and *necessarily* litigated in order for issue preclusion to apply. Not only is there no actual or nec-

essary litigation on the issues in these types of judgments, they are frequently entered into for reasons other than the merits of the case. Defendants often lack sufficient financial incentive or adequate financial support to even answer claims brought against them, and they are quite often not aware of the grounds for nondischargeability and thus have little incentive to defend these cases in the state court. For Discussion, *see,* Fenrell *The Preclusive Effect of State Court Decisions in Bankruptcy,* First Installment, 58 Amer.Bankr. L.R. 349, 364 (1984). For example in, *In re Shuler,* 722 F.2d 1253, 1257 (5th Cir.1984), *cert. denied sub nom. Harold V. Simpson & Co. v. Shuler,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32, the Court held that the bankruptcy court did not error in failing to give collateral estoppel effect to a state court default judgment in that the judgment did not contain detailed facts sufficient as findings to meet the federal test of nondischargeability. (The Court at page 1257, footnote 6 carefully noted however, that since the judgment could not have been accorded collateral estoppel effect, the Court did not reach the issue of whether a state default judgment meets the "actually litigated test" for collateral estoppel purposes in bankruptcy dischargeability determinations). *See also, Matter of Poston,* 735 F.2d 866 (5th Cir.1984), *cert. denied sub nom. Patino's Inc. v. Poston,* 469 U.S. 1086, 105 S.Ct. 591, 83 L.Ed.2d 700, where the Court held that a prior state court default judgment in favor of a creditor which stated that the debt was incurred by fraud did not have collateral estoppel effect in a subsequent bankruptcy dischargeability proceeding when the default judgment did not contain sufficient detailed facts to allow the bankruptcy court to ascertain a specific basis for the conclusory allegations of fraud. (The Court at footnote 3 at page 870 did note that as in *Shuler* it was not expressly ruling on the question of whether a default judgment meets the actually litigated test for collateral estoppel).

The Court in *Spilman v. Hurley,* 656 F.2d 224, 228 (6th Cir.1981), was more conclusive on the issue preclusion or collateral

estoppel effect of a prior state court judgment and stated:

> Collateral estoppel requires that the precise issue in the later proceedings have been raised in the prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome. *See Ross, supra,* 602 F.2d at 608; *Merrill, supra,* 594 F.2d at 1067; *Harrison v. Bloomfield Building Industries, Inc.,* 435 F.2d 1192, 1195 (6th Cir. 1970). . . .
>
> *If the important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in the bankruptcy court. See Commonwealth of Massachusetts v. Hale,* 618 F.2d 143, 146 (1st Cir.1980); *Matter of McMillan,* 579 F.2d 289, 293 (3d Cir.1978); *Pigge, supra,* 539 F.2d at 373; *In re Cooney,* 8 B.R. 96, 98–99 (Bkrtcy.W.D.Ky.1980); *In re Richards,* 7 B.R. 711, 714 (Bkrtcy.S.D.Fla.1980); *In re Ashley,* 5 B.R. 262, 264 (Bkrtcy.E.D. Tenn.1980); *In re McKenna,* 4 B.R. 160, 162 (Bkrtcy.N.D.Ill.1980); *Matter of Mallory,* 1 B.R. 201, 202 (Bkrtcy.N.D.Ga. 1979).
>
> Thus, before applying the doctrine of collateral estoppel, the bankruptcy court must determine if the issue was actually litigated and was necessary to the decision in the state court. To do this, the bankruptcy court should look at the entire record of the state proceeding, not just the judgment, *see Herman, supra,* 6 B.R. at 357; *National Homes, supra,* 336 F.Supp. at 648; *Webster, supra,* 1 B.R. at 63, or hold a hearing if necessary, *see Ross, supra,* 602 F.2d at 608. (Emphasis supplied).

The Tenth Circuit Court of Appeals in *Matter of Lombard,* 739 F.2d 499 (10th Cir.1984) also denied collateral estoppel effect to a state court default judgment in that a necessary issue to nondischargeability for fraud was never actually litigated in the state court.

The Third Circuit Court of Appeals in *Matter of McMillan,* 579 F.2d 289, 292 (3rd Cir.1978), held that where bankrupts did not "actually litigate" a state case in which the creditor obtained a default judgment on the grounds of fraud, not even facts that were necessary to the judgment could collaterally estop the bankrupts from litigating the same issues in a dischargeability proceeding in the bankruptcy court.

Numerous bankruptcy courts have declined to give issue preclusion effect to a state default, judgments or confessed judgments. *See, Matter of Wintrow,* 57 B.R. 695 (Bankr.S.D.Ohio W.D.1986); *In re Bishop,* 55 B.R. 687, 689 (Bankr.W.D.Ky. 1985); *In re Davis,* 47 B.R. 599, 601–602 (Bankr.S.D.Fla.1985); *In re Goodman,* 25 B.R. 932, 936–939 (Bankr.N.D.Ill.1982); *Matter of Poss,* 23 B.R. 487, 489 (Bankr.E. D.Wis.1982); *In re Bursh,* 14 B.R. 702, 705 (Bankr.D.Ariz.1981); *In re Peterson,* 9 B.R. 835, 836 (Bankr.D.Nev.1981).

■ Based on the foregoing analysis this Court concludes that any confessed, default or agreed judgment that is entered in the state court is not entitled to either *res judicata* (claims preclusion) or collateral estoppel (issue preclusion) effect in any dischargeability proceedings subsequently held in the bankruptcy court as to those proceedings arising under § 523(a)(2), (4) and (6), pursuant to § 523(c) i.e., those proceedings designated in § 523(c) in which the bankruptcy court is given exclusive rather than concurrent jurisdiction to determine nondischargeability. This is true regardless of what the collateral estoppel or issue preclusion effect a state court default judgment has in the State of Indiana. As discussed above, the overriding federal policy of exclusivity and uniformity sought to be achieved by § 523(c), together with the varying standards of proof, variations in the necessary elements of the state cause versus the bankruptcy proceeding and the fact that the relevant issues are never actually and necessarily litigated all lead the Court to this conclusion.

Although, the case *sub judice* is not one relating to a default judgment, the Court feels compelled to interject this holding as it necessarily becomes part of the over all analysis the Court was compelled to make to determine the issue of the applicability

of collateral estoppel when certain issues of fact and law are necessarily and actually decided on the merits in the state court.

 Turning to the case at bar, the Court concludes that the proper procedure for the Court to employ when the issues have been actually and necessarily litigated on the merits in the state court is to order the party who is attempting to assert collateral estoppel or claim preclusion to file certified copies of the pleadings, a transcript of the evidence, and the judgment with the bankruptcy court in the dischargeability proceeding. The Court will consider those matters as evidence in the bankruptcy proceeding, carefully review the same and decide what issues, if any, should be given collateral estoppel or issue preclusion effect based on whether the state court proceeding applied the requisite standard of proof and elements of the cause and the relevant issue was actually and necessarily litigated, and then hold a trial as to those remaining issues that must be actually and necessarily litigated in the dischargeability proceeding. *See, Matter of Life Science Church of River Park*, 34 B.R. 529 (Bankr. N.D.Ind.1983). It is therefore,

ORDERED, that the Plaintiffs file in this adversary proceeding a certified copy of all relevant pleadings, a transcript of the evidence submitted at the trial, and a copy of the state court judgment upon which they are relying or advise the Court in writing that they do not wish to rely on the doctrine of collateral estoppel or claim preclusion within 30 days from the date of entry of this Order.