**In re WOODRIDGE NORTH APTS., LTD., a California Limited Partnership, Debtor.**

**Bankruptcy No. 3–86–03059–LK.**
**Adv. No. RS–87–0050–LK.**

United States Bankruptcy Court, N.D. California.

March 18, 1987.

Barry Milgrom, Rosenblum, Parish & Bacigalupi, A Professional Corp., San Francisco, Cal., for debtor.

Peter J. Gurfein, Morrison & Foerster, San Francisco, Cal., for creditor Integrated Building Corp. Ltd.

Leslie Tchaikovsky, Dinkelspiel, Donovan & Reder, San Francisco, Cal., for creditor M.R. Associates.

Ellen A. Carroll, Brobeck, Phleger & Harrison, San Francisco, Cal., for Western Sav. Ass'n.

## OPINION

THOMAS E. CARLSON, Bankruptcy Judge.

Section 1111(b)(1)(A) of the Bankruptcy Code [1] provides that a nonrecourse deficiency claim must be treated as a recourse claim under a chapter 11 plan, unless the collateral is sold under section 363 or under a chapter 11 plan of reorganization.[2] The controlling issue in this proceeding is whether the "sale exception" to the general rule of section 1111(b)(1)(A) applies to a sale at which lienholders may not credit bid. I hold that it does not.

### FACTS

Woodridge North Apartments, Ltd., the chapter 11 debtor in this case, is a limited partnership organized under the laws of California. Its sole asset is a 230-unit apartment building in Dallas, Texas (the Property). Secured creditors Integrated Building Corp., Ltd. and M.R. Associates (Creditors) seek relief from the automatic stay to foreclose on the apartment complex. Debtor concedes that it has no equity in the Property. It acknowledges that the liens on the Property total $6,600,000 and that the fair market value of the property is only $3,300,000. Virtually all the liens on the Property are nonrecourse.

Because Debtor has no equity in the Property, relief from stay must be granted unless the Property is essential to Debtor's reorganization. § 362(d)(2). This test is not satisfied if Debtor cannot obtain confirmation of a plan of reorganization. *See, e.g., In re Ahlers*, 794 F.2d 388, 399, 14 B.C.D. 768, 774 (8th Cir.1986); *In re Albany Partners, Ltd.*, 749 F.2d 670, 673 n. 7, 12 B.C.D. 787, 789 n. 7 (11th Cir.1984).

Debtor proposes the following plan of reorganization. The Creditors would receive periodic cash payments having a present value equal to the value of the Property as determined by the court. Creditors would be paid nothing on the unsecured portion of their claims. The remaining unsecured claims, which are minimal in amount, would be paid in full. The Property would be sold to a newly formed corporation in return for stock of that corporation. Creditors would not be permitted to credit bid at the sale.

### ANALYSIS

Debtor's proposed plan cannot be confirmed if the lienholders have allowable deficiency claims. Debtor proposes no pay-

---

1. All statutory references are to Title 11 of the United States Code.

2. The nonrecourse deficiency claim is also not treated as a recourse claim where the secured creditors elect to have their entire claim treated as a secured claim pursuant to section 1111(b). *See* § 1111(b)(1)(A)(i). This exception need not be addressed in this case.

ments on the deficiency claims and acknowledges that this class of claims would not accept the plan. Thus, the plan could not be confirmed consensually under section 1129(a). Nor could the plan be confirmed under the "cram down" provisions of section § 1129(b). A plan may be confirmed under section 1129(b) only if it is "fair and equitable" with respect to each class of nonaccepting claims. § 1129(b)(1). Debtor's proposed plan would not be fair and equitable with respect to unsecured claims, because it violates the absolute priority rule, which provides that equity interest holders may retain nothing if unsecured creditors have not been paid in full. § 1129(b)(2)(B)(ii). Under Debtor's proposed plan, the holders of unsecured deficiency claims would be paid nothing, while equity holders would receive stock in the corporation to which the Property is to be transferred.

The lienholders would not have enforceable deficiency claims under nonbankruptcy law, because the underlying promissory notes are nonrecourse. Section 1111(b)(1)(A), however, provides that a nonrecourse deficiency claim generally shall be treated as a recourse claim under the chapter 11 plan:

> A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder had such recourse....

Debtor argues that the general rule of section 1111(b)(1)(A) does not apply, because the Property is to be sold under the plan. Section 1111(b)(1)(A)(ii) provides that a nonrecourse deficiency claim need not be treated as a recourse claim where the property subject to the lien "is sold under section 363 of this title or is to be sold under the plan." Creditors argue that this exception to the general rule of section 1111(b)(1)(A) applies only where lienholders have an opportunity to credit bid at the sale.

The language of the Bankruptcy Code does not provide a clear answer. Section 363 suggests that a secured creditor must be permitted to credit bid at a sale under that section. Section 363(k) provides:

> At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

The exception of section 1111(b)(1)(A)(ii), however, applies to a sale under a plan of reorganization as well as to a sale under section 363. There is no statutory provision requiring that a sale under a plan of reorganization accord secured creditors the right to credit bid.

The legislative history and purpose indicate clearly that the exception to section 1111(b)(1)(A) applies only where lienholders are permitted to credit bid. The House and Senate Reports expressly state that secured creditors have the right to credit bid at any sale contemplated in section 1111(b)(1)(A)(ii):

> Sale of property under section 363 or under the plan is excluded from treatment under section 1111(b) because of the secured party's right to bid in the full amount of his allowed claim at any sale of collateral under section 363(k) of the House Amendment.

124 Cong. Rec. H11, 104 (daily ed., Sept. 28, 1978); 124 Cong. Rec. S17, 420 (daily ed., October 6, 1978).

The purpose of section 1111(b) also requires that a lienholder be permitted to credit bid. The provision was enacted in response to the decision in *Great Nat'l Life Ins. Co. v. Pine Gate Associates, Ltd.*, 2 B.C.D. 1478 (Bankr.N.D.Ga.1977). *Pine Gate* arose under chapter XII of the Bankruptcy Act of 1898. In that case, the court allowed debtor to retain property subject to a secured, nonrecourse note by paying the creditor only the fair market value of the property as determined by the court.

The *Pine Gate* decision was criticized on two grounds. First, it imposes on the secured creditor the entire risk of undervalu-

ation of the collateral by the Bankruptcy Court. *See* 5 L. King, C. Cyr, K. Klee, H. Minkel & W. Taggart, *Collier on Bankruptcy*, ¶ 1111.02 at 1111–16 to 17 (15th ed. 1986) (hereinafter Collier); J. Stein, *Section 1111(b): Providing Undersecured Creditors with Postpetition Appreciation*, 56 Am.Bankr.L.J. 195, 200–01 (1982) (hereinafter Stein). Second, it permits the debtor or trustee to secure the exclusive benefits of any future appreciation of the collateral. *See* Collier, *supra*, at 1111–18; Stein, *supra*, at 200–01. The latter factor can be of considerable importance where the value of the collateral is temporarily depressed at the time of the court's determination because of a downturn in the business cycle.

■ Section 1111(b)(1)(A) overrules *Pine Gate* and eliminates the evils described above by converting the nonrecourse deficiency claim to a recourse obligation. As noted above, a plan allowing Debtor to retain the collateral cannot be confirmed without the acceptance of or full payment to unsecured creditors, because such a plan would violate the absolute priority rule of section 1129(b)(2)(B)(ii).

■ The purpose of section 1111(b)(1)(A) is achieved without converting the nonrecourse deficiency claim to a recourse obligation, where the collateral is sold and the lienholders are permitted to credit bid. In such circumstances, the lienholder retains all the essential rights it had outside of bankruptcy. The lienholder would have the right to receive the collateral, unless someone bids enough to pay the note in full. Thus, section 1111(b)(1)(A)(ii) provides that a nonrecourse deficiency claim is not treated as a recourse obligation where there is a sale of the collateral at which lienholders may credit bid.

In contrast, the purpose of section 1111(b)(1)(A) is not satisfied by a sale at which the lienholder may not credit bid. In such circumstances, the lienholder still bears the risk of undervaluation, because it cannot insist that it receive the property instead of the value determined by the Bankruptcy Court. Thus, Collier concludes that the sale exception to section 1111(b)(1)(A) applies only where the lienholder is allowed to credit bid.

Theoretically, if the secured creditor's collateral was sold pursuant to a private sale and the secured creditor did not have an opportunity to bid, the right of offset contained in section 363(k) would not apply and the secured creditor would lose its right to a deficiency claim by virtue of section 1111(b)(1)(A)(ii). It is, however, the clear intent of the draftsmen of the Code to protect the nonrecourse secured creditor by permitting such creditor to have recourse against the debtor, if the creditor is not permitted to bid in the amount of such creditor's debt in connection with a sale of the creditor's collateral. For this reason, property encumbered by a lien in favor of a nonrecourse secured creditor should not be sold at private sale or, if the property is not sold at auction, the secured creditor should be allowed to match any offer made by a prospective purchaser at private sale.

Collier, *supra*, at 1111–23 to 24.

Although there are no prior decisions directly on point, the case law on related questions also supports the conclusion that the sale exception to section 1111(b)(1)(A) applies only where lienholders may credit bid. In *Matter of DRW Property Co.*, 57 B.R. 987 (Bankr.N.D.Tex.1986), the court held that the sale exception applies where the debtor abandons the collateral to the lienholder. In so concluding, the court reasoned that it is the lienholder's opportunity to take the collateral that is the key to the sale exception.

The ability of the non-recourse lender to purchase its collateral at a sale, with a credit offset allowed for any bid up to the full amount of its debt, insures that the lender is protected. If the property is being sold for less than the outstanding indebtedness and the lender feels this price is too low or if it feels future appreciation will be meaningful, it may bid the full amount of its debt at the sale and take title to the property. With this protection, the non-recourse secured lender does not need and therefore is not given the statutory protection of § 1111(b).

The draftsmen of the Code clearly intended to protect the non-recourse undersecured creditor in Chapter 11 reorganizations *only* if the creditor *is not permitted* to purchase the collateral at a sale or if the debtor intends to retain the collateral after bankruptcy and not repay the debt in full.

*Id.* at 992 (emphasis in original). *See also, In re South Village,* 25 B.R. 987, 999, 9 B.C.D. 1332 (Bankr.D.Utah 1982).

CONCLUSION

Because Debtor has no equity in the Property and cannot confirm a plan of reorganization, relief from the automatic stay is granted. § 362(d)(2).