In the Matter of TAMPA BAY ASSOCIATES, LTD., Debtor.

TAMPA BAY ASSOCIATES, LTD., Appellant,

v.

DRW WORTHINGTON, LTD., d/b/a Worthington Park I, Appellee.

No. 88–1517

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Jan. 26, 1989.

Leland C. de la Garza, E. Eldridge Goins, Jr., Goins, Underkofler, Crawford & Langdon, Dallas, Tex., for appellant.

Kathryn C. Mallory, Mark X. Mullin, Haynes & Boone, Dallas, Tex., for appellee.

Before CLARK, Chief Judge, JOHNSON and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this case we are asked to consider whether the bankruptcy court and district court for the Northern District of Texas erred in disallowing Tampa Bay Associates, Ltd. ("Tampa Bay") an unsecured deficiency claim against DRW Worthington, Ltd. ("the Debtor") under Chapter 11 section 1111(b) of the Bankruptcy Code after Tampa Bay, an undersecured, nonrecourse creditor, foreclosed its security interest in the Debtor's collateral. Finding that the district court properly held that Tampa Bay was not entitled to a recourse unsecured claim against the Debtor, we affirm.

## I

Between March 25, 1985 and May 31, 1985, ninety-five related general and limited partnerships filed voluntary petitions in bankruptcy court, seeking protection under Chapter 11 of the Bankruptcy Code. Donald Walker, a Dallas real estate developer and syndicator, was a general partner in each, and each partnership also had at least one corporate general partner, consisting of a corporation whose stock is wholly owned by Walker. Each partnership owned an apartment complex or an office building as its sole asset.

When bankruptcy proceedings began, the ninety-five Walker partnerships owned approximately eighty-three apartment complexes and office buildings in seven states, which secured in the aggregate approximately $255 million in indebtedness to about three hundred secured creditors.

Upon filing the bankruptcy petitions, the Walker partnerships stopped making monthly debt service payments to their secured lenders. The lenders immediately filed applications with the bankruptcy court to prevent the partnerships from using the lenders' "cash collateral" in the form of rental receipts to operate the properties, and requested that the court modify the automatic stay provisions of the Bankruptcy Code to allow the secured lenders to accelerate their indebtedness and foreclose their liens on the properties.

The court refused to lift the automatic stay in situations in which the debtors were able to make periodic cash payments as adequate protection, but forty-seven partnerships were unable to comply with the terms of the court's adequate protection orders and had their sole assets foreclosed upon or abandoned to their secured creditors. Many of the secured creditors who foreclosed were unable to receive full payment at their foreclosure sales, and asserted "deficiency claims" against their debtors for the shortfall. Many of the secured creditors who claimed a deficiency, however, had lent money to their debtors on a nonrecourse basis. Thus by the terms of their mortgage documents they had agreed to look solely to the real property mortgaged as collateral for repayment in the event of default, and waived the right to proceed against the makers of the notes under personal or corporate liability for any deficiency.

On March 29, 1985, the bankruptcy court entered an order procedurally consolidating the partnerships in accordance with Bankruptcy Rule 1015(b). On November 26, 1985, after the consolidation, the ninety-five partnerships filed a single Proposed Joint Disclosure Statement and Plan of Reorganization. One creditor, Treehouse Associates Limited Partners ("Treehouse") specifically objected to the disclosure statement on the grounds that it improperly denied unsecured deficiency claims to the undersecured nonrecourse creditors of the debtors because section 1111(b) of the Bankruptcy Code operated to transform those creditors' nonrecourse claims into recourse claims against the debtors, even where the lenders' collateral had been abandoned or foreclosed during the pendency of the Chapter 11 bankruptcy proceeding. A disclosure statement hearing was held on January 15, 1986, and on February 21, 1986 the bankruptcy court in *Matter of DRW Property Co. 82*, 57 B.R. 987 (N.D. Tex.1986) overruled Treehouse's objection. On March 4, 1986, the bankruptcy court confirmed the Debtor's Third Amended Joint Plan of Reorganization, which provided for the payment of all allowed unsecured claims.

Tampa Bay, the appellant in the case before us, had the misfortune to be an undersecured, nonrecourse creditor of one of the ninety-five Walker partnerships, DRW Worthington, Ltd., at the time it filed its petition in bankruptcy. The Debtor had had as its sole asset the Worthington Park I Apartments. On April 5, 1985, Tampa Bay filed a motion seeking relief from the automatic stay to permit it to foreclose its security interest in the apartment property. The stay was lifted and Tampa Bay subsequently foreclosed.

On April 7, 1986, Tampa Bay filed a proof of claim seeking to recover the principal of $3,825,000, plus interest, from the Debtor. On August 26, 1986 the Debtor filed its objection to Tampa Bay's claim on the basis that Tampa Bay's claim had been fully satisfied by the return of its collateral during the bankruptcy proceeding. On October 8, 1986, after foreclosure and sale, Tampa Bay filed an amended proof of claim, seeking payment of its deficiency of $1,169,204.15. The bankruptcy court disallowed Tampa Bay's deficiency claim in its entirety on January 27, 1988, on the grounds that a nonrecourse, undersecured creditor waives its right to recourse status under section 1111(b)(1)(A) by obtaining possession of its collateral pursuant to a motion for relief from stay or motion for abandonment. The court cited *Matter of DRW.* On appeal, the district court affirmed the bankruptcy court's ruling.

On appeal to this court, Tampa Bay argues that its foreclosure on the Worthington apartments during the pendency of bankruptcy proceedings does not operate to waive its right to a recourse unsecured claim under section 1111(b)(1)(A) of the Bankruptcy Code. According to Tampa Bay, because section 1111(b) provides only two express exceptions to the recourse sta-

tus afforded to otherwise nonrecourse creditors, and a foreclosure sale is not a stated exception, Tampa Bay is allowed a recourse unsecured claim against the Debtor under section 1111(b).

## II

Section 1111(b) reads in relevant part as follows:

(1)(A) A claim secured by a lien on a property of the estate shall be allowed or disallowed under section 502 of this title [11 U.S.C. § 502] the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless:

. . . .

(ii) *such holder does not have such recourse and such property is sold under section 363 of this title [11 U.S.C. § 363] or is to be sold under the plan.*

(Emphasis added.) [1]

Section 1111(b) establishes the general rule, with exceptions, that a claim in a Chapter 11 case secured by a lien on property of the bankrupt estate is to be allowed against the debtor, as if the claimant had recourse against the debtor, whether or not by contract or under applicable state law the creditor had that recourse. The section was enacted by Congress to cure the harsh result of *Great National Life Ins. Co. v. Pine Gate Associates, Ltd.*, 2 B.C.D. 1478 (Bankr.N.D.Ga.1976). In *Pine Gate*, a limited partnership whose sole asset was an apartment project financed on a nonrecourse basis filed for relief under Chapter XII of the former Bankruptcy Act. It proposed a plan of arrangement that limited the secured claims of the lenders to the appraised value of the property, which was

---

1. Section 363 provides in relevant part that

(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate,

. . . .

(k) At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, if unless the court for cause orders otherwise the holder of

such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

If collateral is sold under a plan of reorganization, section 1129(b)(2)(A)(ii) makes any sale under the cram-down provisions of the Code subject to section 363(k). *See Collier on Bankruptcy*, ¶ 1111.02 at 1111.021 & n. 21.

less than the outstanding indebtedness. No provision was made in the plan for allowing the lenders' unsecured deficiency claims, and accordingly the lenders could not vote in the unsecured claims class. At the confirmation hearing the lenders argued that the benefit of the bargain they negotiated for in nonrecourse financing was either full payment, or the right to foreclose on the property. Their rights would not be adequately protected, therefore, unless they were paid in full or allowed to foreclose. The bankruptcy court held that the proposed treatment of the secured claim through a cash payment equal to the appraised value of the collateral was sufficient, and approved the plan over the secured lenders' objections.

After *Pine Gate* it was clear that under the former Bankruptcy Act a debtor could file bankruptcy proceedings during a period when real property values were depressed, propose to repay secured lenders only to the extent of the then-appraised value of the property, and "cram down" the secured lender class, preserving any future appreciation of the property for the debtor.

Congress addressed the *Pine Gate* problem by enacting section 1111(b), which was intended to preserve the undersecured nonrecourse creditor's benefit of the bargain, while preserving the debtor's ability to retain encumbered property essential to its reorganization plan. By providing such creditors with an opportunity to elect to have their liens treated as recourse claims if their debtors intend to retain the property secured, Congress protected both interests.

Section 1111(b)(1)(A)(ii) explicitly excepts from the election option any nonrecourse holder whose secured property is sold pursuant to 11 U.S.C. § 363 or pursuant to a plan of reorganization. Through these exceptions it appears that Congress intended to protect the nonrecourse undersecured creditor only if such a creditor is not permitted to purchase the collateral at a sale or if the debtor intends to retain the collateral after bankruptcy and not repay the debt in full. *See In re Woodridge North*

*Apts., Ltd.,* 71 B.R. 189, 193 (Bankr.N.D. Cal.1987); *see also Collier on Bankruptcy* ¶ 1111.02 at 1111–24 (1th ed. 1985). The legislative history verifies this congressional intent in limiting the applicability of the statutory recourse status: "Sale of property under section 363 or under the plan is excluded from treatment under section 1111(b) because of the secured party's right to bid in the full amount of his allowed claim at any sale of collateral under section 363(k)...." 124 Cong.Rec. H11103–04 (daily ed. Sept. 28, 1978, at 32407).

Foreclosure is similar to a section 363 sale in that the creditor in each instance is allowed the opportunity to preserve the benefit of its bargain with the debtor by purchasing its collateral at a sale, with a credit offset allowed for any bid up to the full amount of the debt. The lender has the opportunity to become the highest bidder and take title to the property, preserving future appreciation for itself if it feels that the sale price is too low. *See In re Woodridge,* 71 B.R. at 192. With this protection, the nonrecourse secured lender does not need the statutory protection of section 1111(b). *See id.*

Therefore, we agree, for the reasons articulated in *Matter of DRW,* relied on by the district court, that the policy concerns underlying the section 1111(b)(1)(A)(ii) exception for section 363 sales or sales under reorganization plans counsel in favor of treating foreclosure sales similarly. Thus the district court properly found that Tampa Bay was not entitled to a recourse unsecured claim under section 1111(b).

### III

In addition to the foregoing analysis that makes it clear that foreclosure sales come within the exclusionary language of section 1111(b), a further rationale supports the conclusion we reach today. Section 1111(b)(1)(A) specifically states that "a claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 ... the same as if the holder of such claim had recourse against the debtor...." Once Tampa Bay foreclosed on

the property it extinguished the "claim secured by a lien" necessary to invoke a section 1111(b) election.

### IV

For the foregoing reasons, the order of the district court is

AFFIRMED. ·