**In re CONSTITUTION PLAZA ASSOCIATES LIMITED PARTNERSHIP, Debtor.**

Bankruptcy No. 92–52031.
Document Nos. 138–1, 138–2.

United States Bankruptcy Court, D. Connecticut.

Dec. 15, 1993.

Richard F. Casher, Hebb & Gitlin, P.C., Hartford, CT, for movant UNUM.

James Berman, Zeisler & Zeisler, P.C., Bridgeport, CT, for respondent debtor.

Joseph L. Clasen, Robinson & Cole, Stamford, CT, for respondent FNB.

Robert S. Matlin, Camhy, Karlinsky & Stein, New York City, for respondent Gaincred.

## MEMORANDUM AND ORDER ON MOTION OF UNUM LIFE INSURANCE COMPANY OF AMERICA FOR ORDER (1) DETERMINING THAT CLASSIFICATION OF ALLEGED DEFICIENCY CLAIMS OF FIRST NATIONWIDE BANK AND GAINCRED III CORP. IN THE DEBTOR'S AMENDED PLAN IS IMPROPER AND (2) COMPELLING DELETION OF SUCH CLAIMS FROM CLASS 4 OF DEBTOR'S AMENDED PLAN

ALAN H.W. SHIFF, Bankruptcy Judge.

### BACKGROUND

The debtor commenced this case by filing a voluntary chapter 11 petition on June 17, 1992. On May 18, 1993, the debtor filed an Amended Plan of Reorganization (the "Plan"). The movant UNUM Life Insurance Company of America ("UNUM") filed a proof of claim alleging that it holds a $17,471,874.03 non-recourse claim secured by a first priority lien in certain real property of the debtor. First Nationwide Bank ("FNB") and Gaincred III Corp. ("Gaincred") each hold non-recourse secured claims, and Hoosac Property Corp. ("Hoosac") holds an unsecured claim. The Plan proposes to treat each of the claims of UNUM, FNB, and Gaincred as undersecured with the result that those claims will be bifurcated, see § 506(a), and treated in part as secured claims and in part as unsecured claims.

The Plan proposes the following classification and treatment of the claims described above:

Class 1: The secured portion of UNUM's claim. The Plan proposes that the debtor will retain UNUM's collateral subject to its lien and pay its secured claim in deferred cash payments. Plan at ¶ 5.01.

Class 2: The secured portion of FNB's claim. The Plan provides: "In full, complete and final satisfaction of all secured claims of FNB, the Debtor shall permit FNB to liquidate its collateral." Plan at ¶ 5.02.

Class 3: The secured portion of Gaincred's claim. The proposed treatment is identical to that of FNB. Plan at ¶ 5.03.

**Class 4:** The deficiency claims of UNUM, FNB, and Gaincred, and the claim of Hoosac. These claims will receive their *pro rata* share of 60 percent of certain "new equity" to be issued under the Plan. Plan at ¶ 5.04.

UNUM filed the instant motion on July 12, 1993, seeking a determination that the foregoing classification scheme is improper and compelling the debtor to delete the alleged deficiency claims of FNB and Gaincred from Class 4. *See* Rule 3013 F.R.Bankr.P.[1] UNUM argues that under the so-called "sale exception" to § 1111(b), the claims of FNB and Gaincred may not be allowed as though those creditors had recourse against the debtor, and that the Plan therefore improperly proposes to pay the alleged deficiency claims of those creditors in Class 4. For the reasons that follow, I concur with that argument.

## DISCUSSION

Section 1111(b)(1)(A) provides in relevant part:

A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless

. . . . .

(ii) such holder does not have such recourse and such property is sold under section 363 of this title *or is to be sold under the plan.* (emphasis added).

Thus, while the non-recourse claims of FNB and Gaincred must generally be allowed as though they are recourse claims, that rule does not apply if their collateral "is to be sold under the plan." The issue is whether the collateral is to be "sold" within the meaning of § 1111(b)(1)(A)(ii) where the Plan provides that the creditors may "liquidate" the collateral in "full, complete and final satisfaction" of their secured claims.

Section 1111(b) is designed to prevent a nonrecourse secured creditor from being "'cashed out' by a payment equal to the value of its collateral." *In re Broad Assocs. Ltd. Partnership,* 125 B.R. 707, 712 (Bankr. D.Conn.1991). Congress enacted the provision to prevent the result in *Great Nat'l Life Ins. Co. v. Pine Gate Assocs., Ltd.,* 2 B.C.D. 1478 (Bankr.N.D.Ga.1976), in which a plan of arrangement limited non-recourse creditors' secured claims to the appraised value of the property and made no provision for any deficiency claim. The creditors argued to no avail that they had not received the benefit of their bargain, which was either to be paid in full or to be allowed to foreclose on their collateral. *See Tampa Bay Assocs., Ltd. v. DRW Worthington, Ltd. (Matter of Tampa Bay Assocs., Ltd.),* 864 F.2d 47, 50 (5th Cir. 1989). Congress intended that § 1111(b) would ensure that non-recourse secured creditors would receive the full benefit of their bargain. The holder of a claim secured by property to be sold under § 363 or the plan is excluded from recourse benefits because of that holder's right to bid in the full amount of its allowed claim under § 363(k). *See* Statement of Congressman Edwards, 124 Cong.Rec. H11089 (Sept. 28, 1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 6436, 6474; Statement of Senator DeConcini, 124 Cong.Rec. S17406 (October 6, 1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 6505, 6543.

In recognition of that unambiguous congressional intent, courts have uniformly held that if a creditor is afforded the right to foreclose on or otherwise receive the return of its collateral, whether pursuant to a plan or otherwise, the creditor is not entitled to receive recourse treatment under § 1111(b). For example, in *Nat'l Real Estate Ltd. Partnership–II v. Consolidated Capital Properties (In re Nat'l Real Estate Ltd. Partnership–II),* 104 B.R. 968, 974 (Bankr.E.D.Wis. 1989), the court found that § 1111(b) was intended to "protect the nonrecourse, undersecured creditor where that creditor is

---

1. Rule 3013 Fed.R.Bankr.P. provides: "For the purposes of the plan and its acceptance, the court may, on motion after hearing on notice as the court may direct, determine classes of creditors ... pursuant to § 1122...." That rule

"recognizes that it may be desirable or necessary to establish proper classification before a plan can be formulated." Advisory Committee Note (1983).

not given an opportunity to purchase the collateral at a sale or where the debtor intends to retain the property and not repay the debt in full." The court held that where a nonrecourse creditor obtained relief from stay and was the successful bidder at a sheriff's auction, the creditor had exercised its right to a credit bid and received all of the protections to which it was entitled under § 1111(b), and the foreclosure sale was the functional equivalent of a § 363 sale. *Accord T–H New Orleans Ltd. Partnership v. Fin. Sec. Assurance, Inc. (Matter of T–H New Orleans Ltd. Partnership)*, 5 F.3d 86, 89 (5th Cir.1993) (a plan need not treat a non-recourse creditor's § 1111(b) deficiency claim where the plan provided that the debtor would market the property for two years, with the secured creditor to have the right to a credit bid at any sale, and then deed the property to the secured creditor at the end of the two year period if no purchaser could be found); *Matter of Tampa Bay Assocs., Ltd., supra*, 864 F.2d at 50 (the purported deficiency claim of a non-recourse creditor was properly disallowed where the creditor had obtained relief from stay and foreclosed on its collateral); *In re Union Meeting Partners*, 160 B.R. 757, 770 (Bankr.E.D.Pa.1993) (a non-recourse secured creditor's plan could not be confirmed where it provided that the debtor return the collateral and preserved the creditor's deficiency claim under § 1111(b)); *In re Western Real Estate Fund, Inc.*, 109 B.R. 455, 465 (Bankr.W.D.Okl.1990) (a plan that transferred collateral to a nonrecourse secured creditor was found to be the equivalent of a "sale" so that the creditor was not also entitled to a deficiency claim as a creditor with recourse); *In re Woodbridge North Apartments, Ltd.*, 71 B.R. 189, 191–92 (Bankr.N.D.Cal.1987) (where a plan proposed to sell a nonrecourse creditor's collateral to a new entity, and the creditor had no right to credit bid at the sale, the creditor did not lose its right to be treated as a recourse creditor because the creditor was stripped of its right to receive the collateral unless it was outbid at auction); *Matter of DRW Property Co. 82*, 57 B.R. 987, 993 (Bankr.N.D.Tex. 1986) ("The failure to include abandonments or motions to lift stay in the specific statutory exceptions to the recourse treatment of non-recourse claims under § 1111(b) has been considered an unintentional omission, rather than an expression of Congressional intent, because the effect of abandonment or relief from the stay is the same as the effect of a sale under § 363 or the plan."); 5 Lawrence P. King, ed., *Collier on Bankruptcy* ¶ 1111.02[3], at p. 1111–33 (15th ed. 1993) ("The effect of abandonment is the same as the effect of a sale under section 363 or under the plan.").

The respondents cite no authority that contradicts the foregoing authority but argue that under the plain language of § 1111(b)(1)(A)(ii) property is not "sold" under the Plan if it merely provides that the creditors may "liquidate" their collateral. They argue that there is a distinction between a "sale" and an "abandonment." *Compare, e.g.* § 363 *with* § 554. They also point out that Congress chose not to use the broadly defined term "transfer" in § 1111(b)(1)(A)(ii). *See* § 101(58)[54].

■ It is of course true that "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). In light of the legislative history described above, this may be such a rare case. The court in *Matter of DRW Property Co. 82, supra*, 57 B.R. at 993, reached that conclusion. That court decided that foreclosures or abandonments outside of the context of any plan were the functional equivalent of sales under § 363. I need not reach that conclusion here, however, because I agree with UNUM that the plain language of § 1111(b)(1)(A)(ii) indicates that the sale exception applies.

■ In the instant case, and unlike the court in *Matter of DRW Property Co. 82*, I must decide not whether the proposed disposition is the functional equivalent of a § 363 sale, but rather whether the collateral "is to be sold under the plan." I conclude that it

is. "Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning.'" *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* —— U.S. ——, ——, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993) (quoting *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979)); *cf. First Brandon Nat'l Bank v. Kerwin (In re Kerwin),* 996 F.2d 552, 558 (2d Cir.1993) ("Absent any evidence that Congress ... sought to restrict what property could be transferred under § 1225(a)(5)(B), we are unwilling to read narrowly its broad language to restrict the usual expansive understanding comprised by the term 'property.'"). As ordinarily used, a sale is "'a transfer of property for a fixed price in money or its equivalent.'" *Commissioner v. Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965) (construing the Internal Revenue Code) (quoting *Iowa v. McFarland,* 110 U.S. 471, 478, 4 S.Ct. 210, 215, 28 L.Ed. 198 (1884)); *accord* Black's *Law Dictionary* 1200 (5th ed. 1979).

Under the Plan, the collateral of FNB and Gaincred or its money equivalent will be transferred to them, either by direct transfer or by the debtor's relinquishment of its property rights and its right to protection of the automatic stay.[2] In consideration of that transfer, valuable secured claims held by the creditors will be fully satisfied. The debtor may not avoid the characterization of the transaction as a sale by couching it in terms that suggest the debtor's role will be a passive one. Further, the fact that Congress did not use the term "abandonment" or "transfer" provides no support for the debtor's position. Neither term describes what the Plan proposes to do as accurately as the term "sale." An abandonment under § 554 returns the abandoned property to the control of the debtor as though there had been no bankruptcy. *In re McGowan,* 95 B.R. 104, 106 (Bankr.N.D.Iowa 1988); H.R.Rep.

No. 595, 95th Cong., 1st Sess. 377 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6333; S.Rep. No. 989, 95th Cong., 2nd Sess. 92 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5878 ("Abandonment may be to any party with a possessory interest in the property abandoned."); *cf.* Black's *Law Dictionary, supra,* at 1200 ("An abandonment must be made without any desire that any other person shall acquire the thing abandoned, since if it is made for a consideration it is a 'sale' or 'barter,' and if made without consideration, but with an intention that some other person shall become the possessor, it is a 'gift.'"). Here, the Plan clearly contemplates that the collateral, or at least its worth in money if the creditors are outbid at any sale of the collateral, will be returned to the creditors in consideration for the satisfaction of their secured claims. The debtor's argument to the contrary notwithstanding, the defined term "transfer" is unnecessarily broad in this context in that it would include conditional dispositions, the retention of title as a security interest, and dispositions where no consideration flowed to the estate.

Irrespective of whether the creditors' "liquidation" of their collateral is to occur through the taking or retention of possession of the collateral, public or private sale, or conveyance in lieu of such sale, the property is to be "sold" under the Plan, the creditors will receive the full benefit of their bargain, and they therefore have no right to recourse treatment under § 1111(b).

### ORDER

Because the Plan impermissibly provides for both the return of collateral to FNB and Gaincred and the treatment of their alleged deficiency claims in Class 4, it is determined that the Plan is not confirmable as a matter of law, and IT IS SO ORDERED.

---

2. It appears that the collateral of FNB and Gaincred includes certain promissory notes executed by the debtor's limited partners, Plan at ¶¶ 4.02, 4.03, and, at least in the case of Gaincred, certain limited partnership interests in the debtor. *See* Memorandum of Gaincred, August 27, 1993,

at p. 3. The respondents do not argue that applicable law limits the creditors' right to either retain that collateral or receive payment of their allowed claims in full at a public or private sale of the collateral.