FILED

APR 06 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

ORDERED PUBLISHED

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP No. CC-14-1334-PaKiTa |
| | ) |
| JAMES HARRY SALAMON; JEANNE FIXLER SALAMON, | ) Bk. No. SA 12-17145-ES |
| | ) |
| Debtors. | ) |
| | ) |
| | ) |
| PETER J. MASTAN, chapter 7 trustee for the estate of David J. Behrend, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **O P I N I O N** |
| | ) |
| JAMES HARRY SALAMON; JEANNE FIXLER SALAMON, | ) |
| | ) |
| Appellees. | ) |

Argued and Submitted on March 19, 2015
at Pasadena

Filed - April 6, 2015
_____

Appeal from the United States Bankruptcy Court
for the Central District of California

Hon. Erithe A. Smith, U.S. Bankruptcy Judge, Presiding

_____

Appearances:    John N. Tedford, IV, of Danning, Gill, Diamond, and Kollitz, LLP, argued for appellant Peter J. Maston. Michael R. Totaro of Totaro & Shanahan argued for appellees James Harry Salamon and Jeanne Fixler Salamon.

_____

Before: PAPPAS, KIRSCHER, and TAYLOR, Bankruptcy Judges.

PAPPAS, Bankruptcy Judge:

Creditor Peter J. Mastan ("Mastan"), the chapter 7[1] trustee in the bankruptcy case of David J. Behrend ("Behrend"), appeals the order of the bankruptcy court disallowing his claim in the chapter 11 bankruptcy case of debtors James Harry Salamon ("James")[2] and Jeanne Fixler Salamon ("Jeanne" and, together with James, "the Salamons"). We AFFIRM.

## I. FACTS

The material facts in this case are undisputed.

### The Property and the Liens

In 2009, Jeanne purchased a 28-unit apartment building in Los Angeles (the "Property") from 716 S. Westlake Avenue Trust, a self-settled trust created and controlled by Behrend.[3] At the time, there were liens securing two preexisting loans secured by the Property, both dating back to 2005: (1) a loan of $829,575.00 secured by a first priority deed of trust in favor of United Commercial Bank ("First Loan"); and (2) a loan of $135,000 secured by a second priority deed of trust in favor of Frank McHugh

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, all Civil Rule references are to the Federal Rules of Civil Procedure 1–86, and all Appellate Rule references are to the Federal Rules of Appellate Procedure 1–48.

[2] We refer to some parties by their first names for clarity. No disrespect is intended.

[3] Behrend conducted his business and financial affairs through various trusts and other entities. As relevant here, the parties do not dispute that Behrend's bankruptcy estate, represented by bankruptcy trustee Mastan, holds the beneficial interest in the Property.

-2-

("Second Loan").

In connection with the purchase, Jeanne executed a "wrap-around" note and mortgage, which included the First and Second loans and deeds of trust, known as the All Inclusive Note and All Inclusive Deed of Trust ("AITD"), for $1,030,000,[4] in favor of Earthwise LLC, as trustee for the seller (a trust controlled by Behrend). The AITD was recorded as a third priority deed of trust on the Property.

Finally, Jeanne also executed a note for a fourth loan in the amount of $325,000 in favor of Earthwise (Behrend), secured by a recorded fourth priority deed of trust (the "Fourth Loan"). The AITD loan and the Fourth Loan proceeds were used entirely for the purchase price of the Property.[5] The AITD and the Fourth Loan documents were signed by Jeanne on April 6, 2009.

Behrend filed a chapter 11 bankruptcy petition on March 25, 2010. Mastan was appointed chapter 11 trustee in that case on March 1, 2011. On May 9, 2011, the bankruptcy court converted Behrend's case to a chapter 7 case, and Mastan was appointed

---

[4] Although it is not clear in the record, the $1,030,000 apparently represented the balance due for principal and interest on the First and Second Loans. Jeanne did not assume liability for these loans, but instead "wrapped around" the loans with the AITD. Jeanne was responsible for making payments on the AITD and Fourth Loan, and Behrend was responsible for making the payments on the First and Second Loans.

[5] Thus, under California law, the AITD and Fourth Loan were purchase money mortgages. A purchase money transaction occurs when "[t]he sum represented by the note and trust deed was a necessary part of the purchase price." Heritage Pac. Fin. LLC v. Edgar (In re Montano), 501 B.R. 96, 109 n.11 (9th Cir. BAP 2013) (quoting Stockton Sav. & Loan Bank v. Massanet, 114 P.2d 592, 597 (Cal. 1941). Significant here, purchase money mortgages come within the purview of California's anti-deficiency statutes. See Cal. Code Civ. Proc. § 580b(a)(2) (quoted, infra, n.6).

-3-

chapter 7 trustee.

**The Salamons' Bankruptcy Case and Mastan's Claim**

The Salamons filed their own chapter 11 petition on June 8, 2012, and, throughout that case, have exercised powers of a debtor in possession of their bankruptcy estate. See § 1107(a).

Mastan, as trustee in Behrend's chapter 7 case, filed a secured proof of claim in the Salamons' chapter 11 case for $1,355,000, the principal due under the AITD and Fourth Loan, on October 3, 2012.

American West Bank ("AWB"), the successor to United Commercial Bank, and the Salamons stipulated that the automatic stay could be terminated so that AWB could foreclose on the Property under the first priority deed of trust. The bankruptcy court approved the stipulation and granted stay relief to AWB in an order entered on October 19, 2012. AWB served a notice of default under the first priority deed of trust on November 1, 2012, recorded a notice of trustee's sale on February 6, 2013, and the Property was sold at a foreclosure sale on March 13, 2013, for $1,275,500.

In November, 2013, Mastan learned that the sale had generated sufficient funds to pay the full amount due on the First and Second Loans and that there were surplus funds available to pay to Behrend's estate. After making demand on the foreclosing trustee, Mastan received a check for $150,560.14. This sum was sufficient to pay the remaining balance on the AITD, and a portion of the amount due on the Fourth Loan. Mastan filed an amended unsecured proof of claim (the "APOC") in the Salamons' chapter 11 case for the remaining balance in the amount of $303,345.75.

-4-

On April 28, 2014, the Salamons filed a motion in the bankruptcy court for an order disallowing Mastan's APOC. The Salamons argued that under Cal. Civ. Code § 580b(a)(2),[6] Mastan could not assert an unsecured claim for any deficiency remaining due on the AITD and Fourth Loan after the foreclosure.

Mastan filed a response to the motion on May 27, 2014. Mastan argued that, although the claim would be barred under California law, § 1111(b)(1) overrides the state law prohibiting a deficiency claim. Mastan pointed out that the only exceptions to the application of § 1111(b) — a class election under § 1111(b)(2), a sale of the Property under § 363, or a sale under a chapter 11 plan — were not present.

In a reply filed June 3, 2014, the Salamons contended that because the Property was removed from the bankruptcy estate via the foreclosure sale, the state anti-deficiency law applied to preclude Mastan's claim. In other words, because Maston's claim was no longer secured by a lien on property of the estate,

---

[6] "(a) [N]o deficiency judgment shall lie in any event for the following: . . . (2) Under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years therein." Cal. Code Civ. Proc. § 580b(a)(2).

There was some discussion at oral argument about whether Cal. Code. Civ. Proc. §§ 580b(a)(2), 580b(a)(3) or 580d applies in this situation. However, by its terms, Cal. Code Civ. Proc. § 580b(a)(3) only applies to foreclosures of residential properties of four units or less, and the Property had twenty-eight units. And while Cal. Code. Civ. Proc. § 580d is a more general statute that extends the anti-deficiency rule to all mortgages, not just purchase money mortgages, Coker v. JP Morgan Chase Bank, N.A., 281 Cal. App. 4th 1, 9 (2013), it does not apply to a non-foreclosing junior lien, such as the AITD or Fourth Loan. Cadlerock Joint Venture, LP v. Lobel, 206 Cal. App. 4th 1531, 1549 (2012). Therefore, Cal. Code Civ. Proc. § 580b(a)(2) controls in this case.

-5-

§ 1111(b) did not apply to it.

Before the hearing on the Salamons' motion to disallow Mastan's claim, the bankruptcy court entered a tentative decision which stated in full:

> Except as noted below, the court incorporates by reference herein the legal analysis and case citations set forth in Debtor's Motion and Reply Pleadings. The Court notes, however, that Debtors are incorrect that the subject property was no longer property of the estate at the time the order granting relief from stay was entered. The granting of relief from stay allows a secured creditor to proceed with foreclosure proceedings but, until a sale actually occurs, the property remains property of the bankruptcy estate. Accordingly, in this case, the property was no longer property of the estate as of the date of the foreclosure sale, i.e., on March 13, 2013. At that point, Creditor no longer held a "claim secured by a lien on property of the estate" for purposes of § 1111(b). Further, the Court agrees that the anti-deficiency provisions under California law, CCP 580(b) [apply].

Tentative Decision, June 10, 2014.

After hearing the arguments of counsel, the bankruptcy court announced its decision, granting the Salamons' motion to disallow Mastan's unsecured claim. Its Order memorializing its decision, entered on June 20, 2014, explained:

> The Court finds the property in question remained property of the estate up and till a foreclosure sale actually occurs. At that point, the Creditor no longer had a claim "secured by a lien on property of the estate" for purposes of Section 1111(b). The court further finds that the anti-deficiency provision under California Law, CCP 580(b), applies.

Mastan filed a timely appeal on June 27, 2014.

## II.  JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court erred in disallowing Mastan's

-6-

amended claim.

## IV.    STANDARDS OF REVIEW

The bankruptcy court's interpretation of the Bankruptcy Code is reviewed de novo. <u>Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)</u>, 204 F.3d 1276, 1279 (9th Cir. 2000). Disallowance of a claim is reviewed de novo. <u>Margaret B. McGimsey Trust v. USA Capital Diversified Trust Deed Fund, LLC (In re USA Commercial Mortgage Co.)</u>, 377 B.R. 608, 617 (9th Cir. BAP 2007) ("Disallowance of a claim is a legal determination that the claim under consideration is not allowable by law.").

## IV. DISCUSSION

The parties agree that resolution of this appeal centers on the bankruptcy court's interpretation of § 1111(b)(1)(A), which provides that:

> A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless
>
> (I) the class of which such claim is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection; or
>
> (ii) such holder does not have such recourse and such property is sold under section 363 of this title or is to be sold under the plan.

§ 1111(b)(1)(A).

Collier explains the role of § 1111(b) in reorganization cases:

> Section 1111(b) represents an attempt by Congress to create a balance between the debtor's need for protection, and a creditor's right to receive equitable treatment.
>
> . . .

> The text of section 1111(b)(1)(A) tells courts to ignore state law and nonrecourse agreements. Unless otherwise excepted, [the court] must treat "a claim secured by a lien on property of the estate . . . the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse." As a consequence, a partially secured nonrecourse creditor may do better in a chapter 11 case than in a chapter 7 case if its deficiency claim has any value. Because a chapter 11 plan does not provide for the sale or other liquidation of the collateral, any valuation which determines a deficiency will be a judicial valuation. In promulgating section 1111(b), Congress essentially stated that such a judicial valuation was not part of the nonrecourse creditor's bargain, and provided an avenue for the creditor to elect to have the deficiency recognized.

7 Collier on Bankruptcy ¶ 1111.03{1][a] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2014).

Although § 1111(b)(1)(A) bestows a potential benefit on a creditor holding a nonrecourse, partially secured claim in a chapter 11 case, a condition precedent to the creditor's enjoyment of that special status is that it must hold "a claim secured by a lien on property of the estate." Here, the question is whether that condition was satisfied because Mastan held such a lien on the date the Salamons' petition was filed, even though the lien no longer existed when the allowance of Mastan's claim was challenged.

In interpreting the Code, "'when the statute's language in plain, the sole function of courts — at least where the disposition required is not absurd — is to enforce it according to its terms.'" Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004); Parks v. Drummond (In re Parks), 475 B.R. 703, 707 (9th Cir. BAP 2012) ("If the statute is clear, the inquiry is at its end, and we enforce the statute on its terms."). "Furthermore, 'the words of [the Code] must be read in their context and with a view to their

place in the overall statutory scheme.'" <u>Danielson v. Flores (In re Flores)</u>, 735 F.3d 855, 859 (9th Cir. 2013) (en banc) (quoting <u>Gale v. First Franklin Loan Servs.</u>, 701 F.3d 1240, 1244 (9th Cir. 2012)). "When the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms." <u>Hartford Underwriters Ins. Co. v. Union Planters Bank</u>, 530 U.S. 1, 6 (2000).

According to § 1111(b)(1), a nonrecourse claim is treated as a recourse claim in a chapter 11 case if it is "secured by a lien on property of the estate." The bankruptcy court noted that, from and after March 13, 2014, the date of the foreclosure sale at which it was sold, the Property was no longer property of the Salamons' bankruptcy estate. "At that point, [Mastan] no longer had a claim 'secured by a lien on property of the estate' for purposes of Section 1111(b)." Thus, the bankruptcy court concluded, in treating Mastan's claim in the same fashion as a recourse claim, § 1111(b)(1)(A) no longer applied and, instead, the California anti-deficiency statutes, including Cal. Civ. Code § 580b, prohibited enforcement of the unsecured claim. As a result, under § 502(b)(1),[7] Mastan's amended claim was disallowed.

_____

[7] This Code provision states:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that —

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or

(continued...)

-9-

Mastan argues that the bankruptcy court erred by not considering the language in § 1111(b)(1)(A) instructing that "[a] claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title" in light of the requirement in § 502(b)(1) that the court "shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition[.]"  Mastan reasons that because, as of the petition date, his claim against the Salamons was secured by liens against property of their bankruptcy estate (i.e., the deeds of trust securing the AITD and Fourth Loan), § 1111(b)(1)(A) overrides state law and requires that Mastan's amended claim be allowed as if he had recourse against the Salamons on account of his claim.  In short, Mastan asks us to interpret "property of the estate" in § 1111(b)(1)(A) as a reference to the property that existed at the time of filing the petition, not at the time of considering the objection to the amended claim.

While case law interpreting this phrase in § 1111(b)(1)(A) is sparse, it is contrary to Mastan's position.  The most oft-cited decision on this issue is <u>Tampa Bay Assocs., Ltd. v. DRW Worthington, Ltd. (In re Tampa Bay Assocs., Ltd.)</u>, 864 F.2d 47 (5th Cir. 1989).[8]  In that case, prior to plan confirmation,

---

[7](...continued)
applicable law for a reason other than because such claim is contingent or unmatured[.]

§ 502(b)(1).

[8]  The citation to this case apparently contains an error. Tampa Bay Associates was a creditor, not the debtor; the debtor
(continued...)

-10-

creditor Tampa Bay obtained stay relief from the bankruptcy court to foreclose its lien on an apartment building owned by debtor DRW Worthington. After the property was sold at a foreclosure sale, Tampa Bay filed an amended proof of claim for the deficiency remaining due after the sale. When DRW objected to the amended claim, the bankruptcy court disallowed it, and the district court affirmed. Id. at 49. The Fifth Circuit agreed with the lower courts and concluded:

> Section 1111(b)(1)(A) specifically states that "a claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 . . . the same as if the holder of such claim had recourse against the debtor. . . ." Once Tampa Bay foreclosed on the property it extinguished the "claim secured by a lien" necessary to invoke a section 1111(b) election.

Id. at 50-51; see also Nat'l Real Estate Ltd. P'ship-II v. Consol. Cap. Partners (In re Nat'l Real Estate Ltd. P'ship-II), 104 B.R. 968, 975 (Bankr. E.D. Wisc. 1989) ("1111(b) only applies to 'a claim secured by a lien on property of the estate.' When [the creditor] completed its foreclosure of the property, its claim no longer was secured by a lien on property of the estate, and § 1111(b) no longer applied.").

Mastan offers no case law supporting his interpretation of § 1111(b)(1)(A) requiring that, if a claim is secured by a lien on property of a debtor's bankruptcy estate as of the date of the case filing, an otherwise nonrecourse debt will thereafter be afforded treatment as a recourse debt even though the property is

[8](...continued) was DRW Worthington, Ltd. As reported in the Federal 2d Series, and in LEXIS and Westlaw, all have an incorrect caption, and thus as cited by others, the error has been perpetuated.

-11-

sold at a foreclosure sale. Two other courts of appeals interpret § 1111(b) in a manner consistent with the analysis of In re Tampa Bay Assocs. See In re Brookfield Commons No. 1 LLC, 735 F.3d 596, 598 (7th Cir. 2013) ("The plain meaning of § 1111(b)(1)(A)is unambiguous . . . . There is one prerequisite: the claim is secured by a lien on the property of the estate."); 680 Fifth Ave. Assocs. v. Mutual Benefit Life Ins. Co. (In re 680 Fifth Ave. Assocs.), 29 F.3d 95, 97 (2nd Cir. 1994) ("The plain meaning of § 1111(b)(1)(A) does not limit itself to consensual or nonconsensual liens. . . . The only precondition to the statute's application is a claim secured by a lien on property of the estate.").

In this case, under California law, the liens securing Mastan's claim were extinguished as a necessary consequence of the nonjudicial foreclosure sale. Thoryk v. San Diego Gas & Elec. Co., 225 Cal. App. 4th 386, 399 (2014); Bank of Am. v. Graves (1996) 51 Cal. App. 4th 607, 611–16 (1996). Although Mastan's original proof of claim may have asserted a claim secured by liens on property of the estate, as recognized in the APOC Mastan filed, those liens were eliminated as a matter of law as a result of the foreclosure. As a result, when Salamons' objection to the claim was considered by the bankruptcy court, Mastan no longer held a lien on any property of the estate.[9] Absent a lien on estate property, the bankruptcy court did not err in deciding that

---

[9] Indeed, Mastan conceded that the Property was no longer property of the estate after foreclosure: "The debtor's position is that somehow the foreclosure sale then divested this property of the estate, which I believe the foreclosure sale would it take [sic] away from property of the estate, but that's not the determination." Hr'g Tr. 3:9–12, June 10, 2014. Unfortunately for Mastan's position, as shown above, that is the proper determination.

-12-

§ 1111(b)(1)(A) did not apply to the APOC, and under the anti-deficiency laws of California, the claim was unenforceable.  As provided in § 502(b)(1), the bankruptcy court did not err in disallowing the amended claim because it was unenforceable under applicable law.[10]

**CONCLUSION**

We AFFIRM the order of the bankruptcy court disallowing Mastan's amended claim.

---

[10]  Like the bankruptcy court, because we base our decision on the plain language of § 1111(b)(1)(A) requiring that, to convert a nonrecourse claim to recourse, the claim must be "secured by a lien on property of the estate," we need not consider the Fifth Circuit's and other courts' alternative reasoning for disallowing such a claim: that a foreclosure is tantamount to a § 363 sale, and that therefore, Congress would intend that the exception in § 1111(b)(1)(A)(ii) apply.  In re Tampa Bay Assoc., 864 F.2d at 50; In re Woodbridge N. Apts, Ltd., 71 B.R. 189, 192 (Bankr. N.D. Cal. 1987).